**CASE NO. 23-1854**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

D.C., by his parents and guardians, Trevor Chaplick and Vivian Chaplick; TREVOR CHAPLICK; VIVIAN CHAPLICK; M.B., by his parents and guardians, James Bingham and Sheila Bingham; JAMES BINGHAM; SHEILA BINGHAM; HEAR OUR VOICES, INC., on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

Fairfax County School Board; Virginia Department of Education; Dr. MICHELLE REID, Superintendent of Fairfax County Public Schools; DR. LISA COONS, Virginia Superintendent of Public Instruction,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Eastern District of Virginia, Case No. 1:22-cv-1070, Hon. Michael S. Nachmanoff

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES FAIRFAX COUNTY SCHOOL BOARD AND DR. MICHELLE REID, SUPERINTENDENT OF FAIRFAX COUNTY PUBLIC SCHOOLS**

---

Julia B. Judkins
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
jbjudkins@fcps.edu
*Counsel for the FCSB*
*Defendants-Appellees*

Jeanne-Marie Burke
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
jsburke@fcps.edu
*Counsel for FCSB*
*Defendants-Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1854__       Caption: __D.C. v. Fairfax County School Board__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Fairfax County School Board; Dr. Michelle Reid, Superintendent of Fairfax County Public Schools__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Julia B. Judkins                      Date:    August 25, 2023

Counsel for: Fairfax County School Board; Dr. Michelle Reid

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE...............................................................3

  I.    Complaint Allegations..................................................................3

  II.   Procedural History.....................................................................7

SUMMARY OF ARGUMENT ..............................................................8

ARGUMENT .....................................................................................9

  I.    Standard of Review ....................................................................9

  II.   Appellants fail to state a claim that any FCSB policy or procedure denies FAPE to students with disabilities ...........................................10

  III.  D.C. and the Chaplicks failed to exhaust administrative remedies and the allegations are insufficient to support any exception to the exhaustion requirement...............................................................14

     A.   The United States Supreme Court's recent decision in *Perez v. Sturgis Public Schools* does not exempt the Chaplicks from the IDEA's exhaustion requirement ..........................................................15

     B.   Appellants have not met their burden to support a futility excuse to the exhaustion requirement ..........................................................18

     1.   The "systemic" exception to exhaustion is not recognized in the Fourth Circuit, and the allegations in this case do not warrant such an exception.. ..............................................................19

i

2.   Appellants have not met their burden of proof that all hearing officers are biased............................................................................................21

IV.   M.B. and the Binghams' claims were properly dismissed due to the duplicative filing in the same court and should be affirmed based on *res judicata* principles ......................................................................................24

V.   The district court properly determined that Hear Our Voices (HOV) lacked standing...........................................................................................25

VI.   The Appellants failed to state a claim for relief under 42 U.S.C. § 1983...27

VII.   Appellants fail to state claims for class action relief..................................27

CONCLUSION ..........................................................................................................30

CERTIFICATE OF COMPLIANCE .......................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) (Thomas, J., dissenting) ....................................................28

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................................9, 14

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011) ..................................................................................9

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ................................................................................28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................9

*Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*,
    62 F.4th 851 (4th Cir. 2023) .................................................................................17

*Boyer-Liberto v. Fontainebleau Corp.*,
    786 F.3d 264 (4th Cir. 2015) ................................................................................10

*D.L. v. Dist. of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013) .............................................................................28

*Devi v. Prince George's Cnty.*,
    No. DKC 16-3790, 2017 WL 3591452 (D. Md. Aug. 21, 2017) .........................11

*DeVries v. Fairfax Cnty. Sch. Bd.*,
    882 F.2d 876 (4th Cir. 1989) ..................................................................................1

*E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*,
    773 F.3d 509 (4th Cir. 2014) ................................................................. 10, 14, 23

*Francis v. Giacomelli,*
    588 F.3d 186 (4th Cir. 2009) ................................................................................10

*Fry v. Napoleon Cmty. Schs.*,
   580 U.S. 154 (2017) .................................................................................14

*Gen. Tel. Co. of SW. v. Falcon*,
   457 U.S. 147 (1982)..................................................................................28

*Hendrick Hudson Cent. Sch. Dist. v. Rowley*,
   458 U.S. 176 (1982) ...................................................................................1

*Honig v. Doe*,
   484 U.S. 305 (1988) ........................................................................... 19, 20

*In re McCormick & Co.*,
   217 F. Supp. 3d 124 (D.D.C. 2016) .........................................................28

*In re McCormick & Co.*,
   275 F. Supp. 3d 218 (D.D.C. 2017) .........................................................28

Indep. Sch. Dist. No. 283 v. E.M.D.H.,
   960 F.3d 1073 (8th Cir. 2020)..................................................................17

*J.N. v. Or. Dep't of Educ.*,
   338 F.R.D. 256 (D. Or. 2021)............................................................ 11, 12

J.T. v. D.C.,
   496 F. Supp. 3d 190 (D.D.C. 2020) .........................................................17

*Jordan v. Alt. Res. Corp.*,
   458 F.3d 332 (4th Cir. 2006) ....................................................................10

*K.I. v Durham Pub. Schs. Bd. of Educ.*,
   54 F.4th 779 (4th Cir. 2022) ............................................................. 10, 21

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ..................................................................................27

*M.B. v. Fairfax Cnty. Sch. Bd.*,
   No. 1:22-cv-930, 2023 WL 5367524 (E.D. Va. Aug. 22, 2023)............... 2, 11, 13

iv

*M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty.*,
   303 F.3d 523 (4th Cir. 2002) .................................................................18

*M.S. v. Fairfax Cnty. Sch. Bd.*,
   No. 1:05cv1476(JCC), 2006 WL 2316202 (E.D. Va. Aug. 11, 2006).................13

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022) ......................................................... 20, 21

*McCrary v. Stifel, Nicolaus, & Co.*,
   687 F.3d 1052 (8th Cir. 2012) ...................................................... 28, 29

*Md. Highways Contractors Ass'n v. Maryland*,
933 F.2d 1246 (4th Cir. 1991) ...............................................................26

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
   436 U.S. 658 (1978) .............................................................................27

*Montana v. United States*,
   440 U.S. 147 (1979) ................................................................... 24, 25

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .............................................................................25

*Perez v. Sturgis Public Schools*,
   598 U.S. 142 (2023) .............................................................. 15, 16, 17

*Pitt Cty. v. Hotels.com. L.P.*,
   553 F.3d 308 (4th Cir. 2009) ..................................................................9

*Pullen v. Botetourt County School Board*,
   No. CIV. 94-686-R, 1995 WL 738983 (W.D. Va. Feb. 13, 1995) .....................19

*R. A-G. v. Buffalo City Sch. Dist.*,
   No. 12-CV-960S, 2013 WL 3354424 (W.D.N.Y. July 3, 2013) ........................12

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) ....................................................... 25, 26

*Scholz v. United States*,
    18 F.4th 941 (7th Cir. 2021) ...................................................................10

*Sellers v. Sch. Bd. Of City of Manassas*,
    141 F.3d 524 (4th Cir. 1998) ........................................................... 17, 27

*Simmons v. Pritzker*,
    No. 22 CV 0123, 2022 WL 7100611 (N.D. Ill. Oct. 12, 2022) ..........................20

*Student A. ex rel. Parent A v. S.F. Unified Sch. Dist.*,
    9 F.4th 1079 (9th Cir. 2021) ...................................................................20

*Suter v. United States*,
    441 F.3d 306 (4th Cir. 2006) .....................................................................9

*Taylor v. Sturgell,*
    553 U.S. 880 (4th Cir. 2008) ...................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 28, 29

Z.G. v. Pamlico Cnty. Pub. Sch. Bd. Of Educ.,
    744 F. App'x 769 (4th Cir. 2018) ..............................................................18

*Zimmerman v. Great Am. Ins. Co.*,
    No. 22-1749, 2023 WL 5696526 (4th Cir. Sept. 5, 2023)....................................10

**Federal Statutes**

20 U.S.C. § 1415 (l).....................................................................................14
20 U.S.C. § 1415(f)(1)(B)..............................................................................22
20 U.S.C. § 1415(i)(2)I.................................................................................17
42 U.S.C. § 1983 .................................................................................. 17, 27

**Virginia Statutes**

8 Va. Admin. Code § 20-81-210(T)(2)...............................................................17
Va. Code § 22.1-214(D).................................................................................17

# **INTRODUCTION**

This case was brought by two families, the Chaplicks and the Binghams, each of whom have a child with a disability—D.C. and M.B., respectively.  As students with disabilities residing in Fairfax County, Virginia, D.C. and M.B. are each entitled to a free appropriate public education (FAPE) provided by the Fairfax County School Board (FCSB), as required by the Individuals with Disabilities in Education Act (IDEA).  The FCSB first evaluated D.C. (now almost 21-years-old) and M.B. (now 16-years-old) and found them eligible for special education and related services when each was five-years old.  (JA21-24).  Ultimately, a dispute arose between the FCSB and each family over the FCSB's proposed educational placement for the students.  (JA22, JA24).  The families sought to have their children placed in a more restrictive environment (JA22, JA24), contrary to the IDEA's requirement that the FCSB educate students with disabilities in the least restrictive environment in which they can access their education.  *See Hendrick Hudson Cent. Sch. Dist. V. Rowley*, 458 U.S. 176, 202 (1982); *DeVries v. Fairfax Cnty. Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989).

The IDEA provides for an administrative review process, including the opportunity for a due process hearing before a hearing officer, to resolve disputes between parents and school districts.  The Chaplicks, however, chose not to avail themselves of that process.  (JA52-54).  The Binghams did file a request for due

1

process, and ultimately the hearing officer concluded that the FCSB offered M.B. a FAPE.  *M.B. v. Fairfax Cnty. Sch. Bd.*, No. 1:22-cv-930, 2023 WL 5367524, at *5 (E.D. Va. Aug. 22, 2023).  The Binghams sought review of that decision in the United States District Court for the Eastern District of Virginia.  The court upheld the hearing officer's determination (*Id.* at *9), and the Binghams did not appeal to this Court.

In this case, despite having failed to pursue the administrative process (Chaplick) or having pursued the administrative process and lost (Bingham), Appellants seek to recast their individual IDEA claims as "class" claims on behalf of other hypothetical students.  The district court below properly granted the Defendants' motions to dismiss.  The FCSB and Fairfax County Public Schools Superintendent Michelle Reid (collectively, the FCSB Appellees) respectfully request that this Court uphold that decision.

## STATEMENT OF ISSUES

1.      Whether the First Amended Complaint (FAC) fails to state a claim that the FCSB Appellants' policies and procedures systemically deny students with disabilities the FAPE to which they are entitled?

2.      Whether D.C. and the Chaplicks failed to exhaust administrative remedies and the allegations are insufficient to excuse them from the exhaustion requirement?

3.    Whether M.B. and the Binghams' claims in this case were duplicative of their claims before a different judge in the same court, and whether those claims are now barred by *res judicata*?

4.    Whether Hear Our Voices (HOV) lacks standing?

5.    Whether Appellants failed to state a claim for relief against Superintendent Reid under 42 U.S.C. § 1983?

6.    Whether Appellants failed to state a claim for class action relief?

## STATEMENT OF THE CASE

### I.    Complaint Allegations

Appellants are two students (D.C. and M.B.) who reside in Fairfax County and are eligible to receive special education and related services, their parents (the Chaplicks and the Binghams), and Hear Our Voices, Inc. (HOV), which is described as a "private, non-profit member organization [ . . . ] incorporated in Delaware [ . . . and] established to protect and advocate for the rights of persons with disabilities and to safeguard the rights of individuals with developmental disabilities." (JA25).  Appellants sued the FCSB Appellees as well as the Virginia Department of Education (VDOE) and VDOE Superintendent of Public Instruction Lisa Coons[1] in her official capacity.  (JA1-5, JA9).

_____

[1] Substituted by Order entered April 27, 2023.

3

The FAC essentially combines two separate purported class actions, on behalf of two separate classes, in this one case. The first action is brought on behalf of a purported class referred to as "the VDOE class." (JA31). This class encompasses all students with disabilities aged 3 to 21 residing within the Commonwealth of Virginia. (JA31). The Defendants to these class claims are the VDOE and State Superintendent Coons. The claims are a wholesale challenge to the Virginia laws and regulations that implement the IDEA.

Although many of the paragraphs in the FAC refer to all the Defendants jointly, it is clear from the Counts, the Prayer for Relief, and the description of the VDOE class, that these claims are not asserted against the FCSB Defendants.[2] (JA31, JA107-127).

Instead, Appellants attempted to pursue a second class action on behalf of "the FCPS class," which they define as "[a]ll students with disabilities aged 3 to 21 residing in Fairfax County who have requested or received an evaluation for special education and related services, under the IDEA and their parents." (JA31). Appellants allege that Superintendent Reid engaged in systemic violations of the United States Constitution (JA107-110) and that the FCSB engaged in systemic

---

[2] The FAC fails to state a claim that Virginia statutes, regulations, and administrative processes violate the IDEA and the United States Constitution. These claims, however, are not brought against the FCSB Appellees—nor could they be as a matter of law. Therefore, the FCSB Appellees do not address those issues in this brief.

4

violations of the IDEA (JA115-118) by failing to provide a FAPE to all students with disabilities residing in Fairfax County.

In support of these allegations, Appellants do not point to a single official policy or practice of the FCSB Appellees. Rather, Appellants assert that they have alleged sufficient facts to support a claim that the FCSB Appellees have a secret practice of engaging in tactics to deny a FAPE to students with disabilities. The FAC consists of 367 paragraphs, and Appellants' Opening Brief before this Court provides citations to the FAC in support of their claims. A close review of the FAC—and in particular the paragraphs cited by the Appellants in their brief—however, reveals that, despite the length of the FAC, the FAC does not allege any facts sufficient to support allegations of a secret practice by the FCSB Appellees. The allegations are mostly about the Virginia regulatory system, which makes sense because, as the Appellants note, that is a "primary target" of the FAC. Appellants' Br. 31. Other "supporting facts" include actions by VDOE and actions by other school districts in Virginia (JA59-61, JA63-64, JA66-67, JA69-70, JA78-80, JA86-87, JA96-98), as well as claims by one unnamed former teacher from an unidentified time period (JA72-73), and concerns about the provision of a FAPE to one unnamed student from an unidentified time period. (JA73-74).

The only facts alleged by Appellants with any particularity relate to the disagreements that the two named families have with the individualized education

5

programs (IEPs) that the FCSB offered to their children.  Given that there are tens of thousands of students with disabilities enrolled in FCPS, it is hardly surprising that on occasion families disagree with the IEPs proposed by the FCSB.  Further, two families disagreeing with the FCSB is simply not sufficient to support claims of a wholesale, systemic failure to provide a FAPE to the tens of thousands of students with disabilities in Fairfax County.

To the extent the Chaplicks and the Binghams alleged facts sufficient to state a claim for *individual* relief, the IDEA provides an administrative process by which disputes between families and school systems can be resolved.  If either party takes issue with the results of the administrative process, that party has the right to request a review of the administrative decision in either federal or state court. The Chaplicks failed to exhaust this administrative process. The Binghams pursued the administrative process and lost.

In 2015, the Chaplicks requested an administrative due process hearing, pursuant to the IDEA. (JA22).  The hearing officer in that matter found that the FCSB offered D.C. a FAPE. (JA49).  In 2021, the Chaplicks again requested a due process hearing, but withdrew their request because the same hearing officer was assigned and did not recuse herself. (JA52, JA108-109).  In so doing, the Chaplicks did not exhaust administrative remedies, and therefore their claims should not be reviewed in federal court.

6

The Binghams did exhaust their administrative remedies. (JA24). Because they disagreed with the results of the administrative process, the Binghams sought a review of the administrative decision in the United States District Court for the Eastern District of Virginia. (JA25). The Binghams' appeal was pending before a judge in the same district court when the judge in this matter determined that the Binghams' claims in this case were duplicative of the claims in their administrative appeal. In the administrative matter, the court has now determined that the FCSB *did* provide a FAPE to M.B., and the Binghams did not appeal that decision to this court.

## II.  **Procedural History**

Appellants filed the FAC on January 20, 2023. Both the FCSB Appellees and the VDOE Appellees moved to dismiss the FAC on multiple grounds, including a failure to state a claim against the FCSB Appellees. ECF Nos. 51, 52, JA7. The FCSB Appellees continue to rely on all arguments raised in support of their Motion to Dismiss. In an order published on July 25, 2023, the district court properly granted the motions to dismiss on the basis that D.C. and the Chaplicks failed to exhaust administrative remedies, M.B.'s and the Binghams' claims were duplicative of the pending district court matter reviewing the administrative hearing officer determination, and HOV did not have standing to sue. (JA216-228).

7

## SUMMARY OF ARGUMENT

The district court properly dismissed Appellants' claims against FCSB and Superintendent Reid.

**First,** Appellants' claims of systemic violations should be dismissed for failure to state a claim because Appellants do not and cannot point to any FCSB official policy or practice that violates the IDEA. They argue instead, in sweeping and conclusory statements that lack any factual basis, that the FCSB Appellees engage in a secret practice of denying the rights of the FCPS class.

**Second,** the district court properly concluded that the Chaplicks chose not to exhaust administrative remedies as required under the IDEA and failed to carry their burden of proving that excusal from exhaustion was warranted.

**Third,** the Binghams did exhaust their administrative remedies and appealed the hearing officer's decision to federal court. The district court in this case properly concluded that Binghams' claims in the case reviewing the hearing officer's determination were duplicative of their claims in this case and therefore should be dismissed. In the interim, the court reviewing the hearing officer's findings has now determined that the FCSB Appellees provided a FAPE to M.B. Accordingly, the Binghams' claims are now subject to *res judicata* principles.

**Fourth,** the district court properly found that HOV has neither organizational nor associational standing in this matter. (JA216-221).

8

*Fifth,* Appellants failed to state a claim under 42 U.S.C. § 1983 against Superintendent Reid. Those claims are in actuality IDEA claims, and therefore must proceed through the IDEA's remedial processes.

*Sixth,* the class claims against the FCSB Appellees were properly dismissed for failure to state a class claim because Appellants failed to set forth sufficient facts to meet the threshold requirements under Federal Rule of Civil Procedure 23(a).

## ARGUMENT

### I. Standard of Review

In reviewing the district court's rulings on the FCSB Appellees' motion to dismiss, this Court is not limited to the grounds stated by that court but "may affirm on any grounds apparent from the record." *Pitt Cty. V. Hotels.com. L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (quoting *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). Accordingly, this Court may also dismiss this action based on the FCSB Appellee's arguments that Appellants failed to state a claim as required by Rule 12((b)(6) of the Federal Rules of Civil Procedure.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "'factual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudging . . . claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). *See also Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)

(holding that bare legal conclusions "are not entitled to the assumption of truth" and cannot state a claim); *Jordan v. Alt. Res. Corp.,* 458 F.3d 332, 346 (4th Cir. 2006), *overruled in part on other grounds by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015); *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

With respect to exhaustion of administrative remedies, this Court has determined that the issue "'is a pure question of law that we review de novo.'" *K.I. v Durham Pub. Schs. Bd. Of Educ.*, 54 F.4th 779, 788 (4th Cir. 2022) (quoting *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. Of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014)).

Whether the Binghams' claims were duplicative of another matter is reviewed for abuse of discretion. *See, e.g., Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021).

Finally, dismissal for lack of standing is reviewed de novo. *Zimmerman v. Great Am. Ins. Co.*, No. 22-1749, 2023 WL 5696526, at *1 (4th Cir. Sept. 5, 2023).

## II.  Appellants fail to state a claim that any FCSB policy or procedure denies FAPE to students with disabilities

The FAC includes allegations about the IEPs offered to D.C. and M.B., their parents' disagreements with those IEPs, and the families' frustration that the IDEA administrative processes administered by VDOE did not provide them with the relief sought.  Appellants essentially rely upon these allegations of their individual

10

complaints to support a claim for systemic relief. (JA50-52; JA93-96) And for one of those families—the Binghams—a federal district court has already determined that the FCSB Appellees *did not* violate the IDEA. *M.B. v. Fairfax Cnty. Sch. Bd.*, 2023 WL 5367524, at *13.

Based on their disagreement with the IEPs offered to their children, the Appellants assert that the FCSB Appellees fail to comply with the most fundamental requirements of the IDEA *at all*, such as providing special education services and evaluations for students with disabilities (JA72), providing independent education evaluations (JA76), ensuring IEPs are properly developed, implemented, and followed (JA83, JA99), providing procedural safeguards (JA31-32), and ensuring that accurate information is provided to parents (JA76-77).

To survive a motion to dismiss, a complaint alleging systemic, or pattern or practice, violations must provide some factual basis to support that the claims at issue are something more than individual experiences. *See, e.g., Devi v. Prince George's Cnty.*, No. DKC 16-3790, 2017 WL 3591452, at *4 (D. Md. Aug. 21, 2017).

In the IDEA context, class actions have proceeded on claims of systemic violations in cases where defendants are alleged to have a specific policy or practice that resulted in a narrow category of violations, affecting a specific category of students in the same or similar way. For example, in *J.N. v. Oregon Department of*

11

*Education*, six policies and procedures of the state department of education were alleged to result in school divisions across the state shortening school days of students with behavioral issues, denying those students the right to be educated in the least restrictive environment alongside their peers without disabilities. *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 270-73 (D. Or. 2021).

In another IDEA class action case, plaintiffs alleged that the defendant school district maintained a policy of not providing related services (such as occupational, physical, or speech/language therapy) during the first two weeks (or longer) of the school year. *R. A-G. v. Buffalo City Sch. Dist.*, No. 12-CV-960S, 2013 WL 3354424, at *3 (W.D.N.Y. July 3, 2013). Plaintiffs further alleged that this policy resulted in systemic violations of the IDEA because the school district was failing to assess individually the needs of students and to implement the related services required by the students' IEPs. *Id.*

Unlike those cases, Appellants here do not point to *any* specific policy or practice of the FCSB Appellees that would result in systemic violations. They do not do so because those policies and procedures—which are publicly available—comport with the requirements of the IDEA.[3]

---

[3] *See, e.g.,* Fairfax County Public Schools (FCPS) Policies, Bylaws, and Regulations, https://insys.fcps.edu/schoolboardapps/report_policy/cache/alpha-A.htm; FCPS Procedures Required for Implementation of Special Education Regulations in Virginia's Public Schools, https://www.fcps.edu/academics/academic

Instead, Appellants assert that because the Chaplicks and the Binghams were not satisfied with the FCSB Appellees' proposed placement for their two students, the FCSB Appellees must be engaging in a secret practice not to follow the requirements of the IDEA for each of the over twenty-six thousand students with disabilities enrolled in Fairfax County Public Schools. They support this leap by citing to: (1) the FCSB's separate agreement with a federal agency to provide compensatory services to students whose learning was impacted during the COVID-19 pandemic (JA100-102);[4] (2) the actions of other school divisions across Virginia (JA59-61, JA63-64, JA66-67, JA69-70, JA78-80, JA86-87, JA96-98); (3) purported allegations by one unnamed teacher from an unidentified time period (JA72-73); and (4) purported allegations regarding an unnamed students from unidentified time periods. (JA73-74).

---

overview/special-education-instruction/special-education-procedural-support-6; and FCPS Grading and Reporting, https://www.fcps.edu/academics/grading-and-reporting.

[4] In their separate district court case challenging the findings of the hearing officer, the Binghams also attempted to make the argument that the FCSB's voluntary settlement with a federal agency should be used as evidence that M.B. was not provided a FAPE during the COVID-19 pandemic. The judge, however, rejected the argument for multiple reasons, including that the letter of findings from the agency "is a unilateral determination issued primarily through a paper inquiry. . . which does not have sufficient guarantees of reliability." *See M.B.*, 2023 WL 5367524, at *11 (citing *M.S. v. Fairfax Cnty. Sch. Bd.*, No. 1:05cv1476(JCC), 2006 WL 2316202, at *3-4 (E.D. Va. Aug. 11, 2006)).

These vague and speculative allegations simply cannot be sufficient to state a claim that the FCSB Appellees are systemically denying a FAPE to all students with disabilities, contrary to the FCSB Appellees' own policies and procedures. As such, the FCSB Appellees respectfully request this Court to dismiss the FAC because it fails to state a claim for systemic relief against the FCSB Appellees. *See Iqbal,* 556 U.S. at 679.

**III.    D.C. and the Chaplicks failed to exhaust administrative remedies and the allegations are insufficient to support any exception to the exhaustion requirement**

Because the FAC fails to state a claim for systemic relief, the question becomes whether the Appellants can proceed as individuals. The Chaplicks may not do so because they failed to comply with the IDEA's administrative exhaustion requirement, as the District Court below properly determined. Claims under the IDEA that allege a denial of a FAPE must be administratively exhausted prior to being brought before a federal court. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 170 (2017) (noting the IDEA's exhaustion requirement applies when the "gravamen of a complaint seeks redress for a school's failure to provide a FAPE"); 20 U.S.C. § 1415 (l). As this Court has stated previously, "the IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to resolve educational disputes." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. Of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014).

14

Appellants do not dispute that the Chaplicks failed to exhaust their available administrative remedies. They argue instead that their failure to pursue any administrative avenues for relief should be excused. First, Appellants argue that they should be excused from the exhaustion requirement based on a misreading of a recent case from the Supreme Court of the United States (*Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023)). If that argument fails, Appellants claim that exhaustion would have been futile based on: (1) an exception to the exhaustion requirement that has not been recognized in this Circuit and virtually never applied in other circuits; or (2) an assertion without support that all hearing officers in the entire Commonwealth of Virginia are biased.

### A. The United States Supreme Court's recent decision in *Perez v. Sturgis Public Schools* does not exempt the Chaplicks from the IDEA's exhaustion requirement

Appellants argue that based on *Perez v. Sturgis Public Schools,* 598 U.S. 142 (2023), they are not required to exhaust administrative remedies for their claims. However, the Supreme Court's decision to excuse the *Perez* plaintiff's failure to exhaust rested on factors that are not present in this case: 1) the plaintiff's claims were brought under the Americans with Disabilities Act (ADA), and 2) the plaintiff sought "backward-looking relief in the form of compensatory damages"—relief that is available under the ADA, but not under the IDEA. *Id.* At 144, 147-48.

15

The *Perez* case was brought by Miguel Luna Perez, who is deaf. *Id.* at 145. From the ages of 9 through 20, he was educated by the Sturgis Public School District in Michigan. *Id.* Mr. Perez alleged that the school district had denied him qualified aides to translate classroom instruction into sign language. *Id.* Additionally, Mr. Perez alleged that the school district had "misrepresented [his] educational progress and 16dvance[ed] him from grade to grade regardless of his progress." *Id.* Because of the misrepresentations, Mr. Perez and his family "believed he was on track to graduate" on time until "months before graduation, Sturgis revealed that it would not award him a diploma." *Id.*

Mr. Perez filed a state complaint, and eventually he and the school district agreed to a settlement that provided Mr. Perez "all forward-looking equitable relief he sought." *Id.*

Mr. Perez then "filed an action in federal district court under the ADA seeking backward-looking relief in the form of compensatory damages." *Id.* The school district argued that Mr. Perez's suit should be dismissed for failure to exhaust administrative remedies. *Id.* Ultimately, the United States Supreme Court reviewed the case and determined that "where a plaintiff brings a suit *under another federal law* for *compensatory damages*," exhaustion is not required. *Id.* at 147-48 (emphasis added).

16

Here, the Appellants do not bring claims under the ADA, and all the claims against the FCSB Appellees are premised on alleged violations of the IDEA.[5] Additionally, Appellants do not seek compensatory damages, as was the case in *Perez,* but rather only equitable relief, which is available under the IDEA.[6] Although the Supreme Court was clear that it was narrowly deciding the issue before the Court (*Id.* at 151), Appellants here urge a much broader application, which would expand the ruling— beyond cases brought under the ADA for compensatory damages— to IDEA disputes in which plaintiffs seek systemic equitable relief. Such an expansive interpretation goes well-beyond the circumstances at issue in *Perez*.

Even if this Court were inclined to broaden the holding in *Perez*, Appellants' argument presupposes that they have stated a claim of systemic violations. But they

---

[5] Count II (a purported due process claim alleging deprivations of property and liberty interests as provided by the IDEA) (JA110) and Count I (a purported equal protection claim alleging a denial of the FAPE guaranteed by the IDEA) (JA107-108) are brought under 42 U.S.C. § 1983 (Section 1983). As discussed in more detail in Section VI below, claims asserting a deprivation of rights under the IDEA may not be recast as constitutional claims under Section 1983. *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998). Therefore, Counts I and II are IDEA claims, despite Appellants attempts to create claims outside of the IDEA.

[6] *See, e.g., Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 62 F.4th 851, 861 (4th Cir. 2023) ("Courts have thus viewed ALJs in IDEA cases as having broad remedial authority.") (citing *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1084 (8th Cir. 2020); *J.T. v. D.C.*, 496 F. Supp. 3d 190, 211–12 (D.D.C. 2020)); 20 U.S.C. § 1415(i)(2)(C) (stating that on appeal a court may "grant such relief as the court determines is appropriate"); *accord* Va. Code § 22.1-214(D), 8 Va. Admin. Code § 20-81-210(T)(2).

17

have not, as discussed above.  What Appellants have pleaded is that the Chaplicks are not satisfied with the IEP that the FCSB offered D.C.  That is precisely the sort of claim that is best addressed through the IDEA's administrative process.

### B.  Appellants have not met their burden to support a futility excuse to the exhaustion requirement

Appellants next argue that this Court should excuse the Chaplicks' decision not to exhaust because exhaustion would have been futile.  This Court has recognized only three narrow exceptions to the exhaustion requirement: "(1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *M.M. ex rel. D.M. v. Sch. Dist. Of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002) (citations omitted).

Here, Appellants assert that administrative processes would have been futile. They attempt two arguments on this point.  First, Appellants ask this Court to recognize for the first time a "systemic" exception to the exhaustion requirement. Next, Appellants argue that all hearing officers in Virginia are biased. Appellants bear the burden of proving that exhaustion would have been futile. *Z.G. v. Pamlico Cnty. Pub. Sch. Bd. Of Educ.*, 744 F. App'x 769, 777 (4th Cir. 2018). They have failed to meet that burden.

1.  **The "systemic" exception to exhaustion is not recognized in the Fourth Circuit, and the allegations in this case do not warrant such an exception**

Although Appellants vaguely state that "courts" have recognized a "systemic" exception, they fail to mention that this exception has never been adopted by or within the Fourth Circuit. Appellants' Br. 34. To be clear, Appellants are asking this Court to join a *minority* of other Circuits in allowing a systemic exception to the exhaustion requirement—an exception not contained in the plain text of the IDEA.

The only case from the Fourth Circuit cited for this sweeping assertion is an unreported district court opinion from 1995, *Pullen v. Botetourt County School Board*, No. CIV. 94-686-R, 1995 WL 738983 (W.D. Va. Feb. 13, 1995). In *Pullen*, the plaintiff did not allege systemic violations, nor was the Court required to perform any analysis on that point. The line cited from that opinion by Appellants (noting that "[r]ecourse to administrative procedures will generally be futile when the plaintiff alleges structural or systemic failure" (*Id.* at *2)) is merely a recitation of a quotation from another circuit that is presented by the court in its broad examination of IDEA exhaustion case law—it is not commented upon or used in further analysis. *Id.* The Appellants take this single line of *dicta* and inflate it to conclude that the exhaustion exemption for systemic claims has been recognized in the Fourth Circuit.

Appellants also cite to the Supreme Court case of *Honig v. Doe*, 484 U.S. 305 (1988) which, like *Pullen*, does not involve the Court engaging in any kind of

19

analysis or making any conclusions that systemic claims should be addressed in a special manner. Instead, the cited portion of the *Honig* case merely acknowledges a futility exception to the general exhaustion requirement. *Id.* at 326-327.

Interestingly, although a few circuit courts have recognized the *possibility* of a "systemic exception," the actual application of this exception has been almost nonexistent. As the United States Court of Appeals for the Ninth Circuit has noted, "The systemic exception . . . is something of an enigma. We first recognized the exception 30 years ago, but 'no published opinion in this circuit has ever found that a challenge was "systemic" and exhaustion not required.'" *Martinez v. Newsom*, 46 F.4th 965, 974 (9th Cir. 2022) (quoting *Student A. ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021)). *See also Simmons v. Pritzker*, No. 22 CV 0123, 2022 WL 7100611, at *4 n.3 (N.D. Ill. Oct. 12, 2022) (noting that "[t]hough at least three circuits recognize a systemic-violation or general-applicability exception, of those, only the Second Circuit has ever found one in practice"). Not only do Appellants contend that they should be the first plaintiffs in the Fourth Circuit to be given the benefit of the syste"ic exception, they also seek to become one of the few plaintiffs in the entire nation that have ever been granted the benefit of it.

Even if this Court chose to recognize a systemic exception, Appellants have not sufficiently pleaded claims of systemic violations against the FCSB Appellees,

as discussed above. For a systemic exception to apply, Appellants "must, at a minimum, identify an 'agency decision, regulation, or other binding policy' that caused his or her injury." *Martinez*, 46 F.4th at 974. Appellants have not done so in this case. Accordingly, a systemic exception should not apply.

### 2. Appellants have not met their burden of proof that all hearing officers are biased

The Chaplicks' final attempt at being excused from exhausting administrative remedies is by asserting that the process would have been futile because every hearing officer in Virginia is biased against students with disabilities and their families. Despite their conclusory allegations, anecdotal grievances, and flawed statistics, Appellants have not rebutted—and cannot rebut—the "presumption of honesty and integrity" afforded to hearing officers. *K.I. v. Durham Pub. Sch. Bd.of Educ*, No. 1:19-cv-857, 2020 WL 3512213, at \*6 (M.D.N.C. June 29, 2020). Appellants attempt to weave a disjointed web of "conflicts of interest" by referring to the fact that hearing officers are paid by the state (and not the school divisions) for their experience, expertise, and hard work in hearing and deciding due process cases as a "direct and substantial pecuniary interest." (JA64) Similar efforts to frame common administrative practices that allow due process hearings to be conducted in an efficient and effective manner do not make a showing of actual bias, no matter how ominously appellants attempt to present them.

21

Appellants' attempts at proving hearing officers bias with flawed and incomplete statistics regarding the outcomes of due process hearings do not rebut the presumption of honesty and integrity either. As an initial matter, the denominator used in the statistics—the number of cases that actually end up as contested cases decided by a hearing officer—discounts that many cases are settled before reaching that point. Educators and parents all want what is best for their students, and most recognize that effective communication and collaboration, rather than protracted litigation, best solves disputes arising under the IDEA. Indeed, this effort at collaboration is at the very heart of the IDEA's administrative review process, which also includes a mandatory period in which the parties must attempt to resolve the dispute either informally or with the assistance of a mediator. 20 U.S.C. § 1415(f)(1)(B).

It is also true that school divisions are most likely to settle those cases that they are most at risk of losing—or those without merit when a cost-benefit analysis weighs in favor of settling—before those cases go in front of a hearing officer for a decision. So, although Appellants would have this Court believe that even the most egregious abuses are ignored by hearing officers, the reality is that those cases are the least likely to go forward to a hearing because they have already been settled between the school division and the parents.

Appellants' own statistics support the conclusion that the only cases that proceed to a due process hearing are those for which the school district determines it is likely to prevail and the cost-benefit weighs in favor of litigating. According to Appellants' statistics, the number of complaints settled, withdrawn, or dismissed prior to a hearing vastly outweighs the number that are resolved through a hearing. If school districts receive more favorable outcomes from hearings more frequently than parents, it is at least as likely that the reason for this is that school districts endeavor to resolve cases in which they have potential liability and only litigate when the law and the facts predict a greater likelihood of success.

None of Appellants' arguments and conclusory allegations rebut the presumption of integrity for hearing officers such that the Chaplicks' decision not to pursue a due process hearing should be excused as futile. In any event, had the Chaplicks followed the due process procedure (during which they could have raised the issue of bias) and been unsuccessful, they then could have filed their individual IDEA request for federal court review. During that review process, they could have requested that the court consider further evidence, including hearing officer bias. *See E.L. ex rel. Lorsson v. Chapel Hill Carrboro Bd. Of Educ.*, 773 F.3d 509, 516-17 (4th Cir. 2014) (noting that under the IDEA, a reviewing court receives the full record of the administrative proceeding, can hear additional evidence, and conducts a *de novo* review).

23

Accordingly, the FCSB Appellees respectfully request that this Court uphold the district court's decision that the Chaplicks failed to exhaust administrative remedies and did not meet their burden of proof for excusal.[7]

## IV. M.B. and the Binghams' claims were properly dismissed due to the duplicative filing in the same court and should be affirmed based on *res judicata* principles

Unlike the Chaplicks, the Binghams did exhaust their administrative remedies. They also, however, cannot proceed in this action because they previously raised their claims against the FCSB Appellees before a separate judge in the same district court. Those claims were not only duplicative of their claims in this action, but are now barred by *res judicata* as a result of that judge's findings and entry of a final order finding that the FCSB provided M.B. a FAPE. *See Taylor v. Sturgell,* 553 U.S. 880, 891-93 (4th Cir. 2008) ("Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not re-litigation of the claim raises the same issues as the earlier suit.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001))). The Binghams are precluded from contesting matters "that they have had a full and fair opportunity to litigate[.] . . .

---

[7] Appellants also argue that the Chaplicks have vicariously exhausted administrative remedies because the Binghams did. However, Appellants argue that the Binghams claims in this case are distinct from the claims presented in their administrative case. Appellants cannot have it both ways. Either the Binghams did exhaust and that case is duplicative of this one, or they did not exhaust and both the Chaplicks and the Binghams claims should be dismissed for failure to exhaust.

[This] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

Like the Chaplicks, the Binghams also attempt to avoid dismissal by invoking the "systemic" nature of the claims and relief sought in this action. Again, however, the Appellants have failed to state a claim for systemic relief.

## V. The district court properly determined that Hear Our Voices (HOV) lacked standing

The district court determined that HOV lacked standing, both on behalf of any members (representational standing) and for its own alleged damages (organizational standing). The district court's findings apply to both the VDOE Appellees and the FCSB Appellees. Therefore, to avoid duplication of argument, the FCSB Appellees adopt by reference the arguments regarding HOV's lack of standing made by the VDOE Appellees in their separate brief.

However, with respect to representational standing, there is one point of clarification that is distinct to the claims against the FCSB Appellees. To meet the requirements of representational standing, HOV must demonstrate that "'(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3)

neither the claim nor the relief sought requires the participation of individual members in the lawsuit.'" *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (quoting *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)).

In a footnote, the district court judge stated that he was "unconvinced that adjudicating these claims would require individual participation . . . to determine whether Virginia's system provides all the rights and procedural safeguards that the IDEA requires." (JA219 (citation omitted)). That statement, however, relates only to the purported claims against the VDOE Appellees. The claims against the FCSB Appellees are entirely focused on whether the FCSB Appellees provide a FAPE to its students with disabilities through appropriate *individualized* education programs. The only method for determining whether an individual student was provided a FAPE is through an examination of the circumstances surrounding that individual student. This would have to be done for each of the tens of thousands of students who have "requested or received an evaluation for special education and related services." (JA31). Because resolution of the claims against the FCSB Appellees requires the participation of individual HOV members, HOV does not have representational standing.

26

## VI.    The Appellants failed to state a claim for relief under 42 U.S.C. § 1983

The FAC fails to state claims under 42 U.S.C. § 1983 against Superintendent Reid in her official capacity.[8] Although Counts I and II of the FAC are styled as Section 1983 claims based on alleged due process and equal protection violations (JA107-110), they are improper attempts to shoehorn IDEA claims into a different cause of action.  This Court has held that parties may not proceed on Section 1983 claims for IDEA violations "[b]ecause IDEA provides a comprehensive remedial scheme for violations of its own requirements."  *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998).  It is clear from the pleadings that the "federal rights" Appellants assert under Section 1983 are those set forth in the IDEA—the rights to a FAPE, an IEP, and impartial due process hearings.  Any action to vindicate IDEA rights must be brought under the detailed processes established by the IDEA.  Accordingly, Appellants have failed to state a claim and Counts I and II of the FAC should be dismissed.

## VII.    Appellants fail to state claims for class action relief.

The class claims should be dismissed for failure to state a claim because Appellants fail to set forth sufficient facts to meet the threshold requirements under

---

[8] Although the FAC named Superintendent Reid in her official capacity, an official capacity claim is essentially the same claim that could be brought against the entity of which she is an agent—the FCSB.  *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Fed. R. Civ. P. 23(a). *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (quoting *McCrary v. Stifel, Nicolaus, & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012)  (holding that "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion")), amended on other issues, *In re McCormick & Co.*, 275 F. Supp. 3d 218 (D.D.C. 2017); *Beck v. McDonald*, 848 F.3d 262, 269-71 (4th Cir. 2017).

Rule 23(a) requires not merely the literal raising of "common 'questions,'" but rather "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original) (citations omitted); *D.L. v. Dist. of Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013).  In other words, not only must the plaintiffs' claims depend upon a "common contention," but plaintiffs must "demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 349-50 (emphasis added) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982) ); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 491 (2013) (Thomas, J., dissenting) ("A plaintiff seeking class certification is not required to prove the elements of his claim at the certification stage, but he must show that the elements of the claim are susceptible to class wide proof.").

The Supreme Court has explained the required level of commonality "does not mean merely that [members of the class] have all suffered a violation of the same

provision of law." *Wal-Mart*, 564 U.S. at 350. Rather, the "claims must depend upon a common contention" and "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." *Id.* (emphasis added). "Without some glue holding the alleged *reasons* for all those decisions together," the Court held, "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question." *Id*. at 352 (emphasis in original). Rule 23 class actions are not an appropriate vehicle for resolving individual allegations challenging distinct decisions made by different persons who had been given substantial discretion, because such situations are the antithesis of a situation in which the resolution of a challenge to a single policy or practice may efficiently resolve multiple claims at once. In *Wal-Mart*, the plaintiffs attempted to introduce "statistical and anecdotal evidence" to demonstrate a commonality of actions, but the Court found such "evidence falls well short*." Wal-Mart*, 564 U.S. at 356.

Adjudication of such claims as described for the FCSB class would require review of highly individualized facts given the nature of the IDEA process and the *individualized* education program requirements. Such claims are not capable of class-wide proof and resolution. *See McCrary*, 687 F.3d at 1058-59 (dismissing class claim that would require review of highly individualized facts).

29

Accordingly, the FCSB Appellees respectfully request that this Court dismiss the class claims.

## **CONCLUSION**

For all of the above reasons, for any additional reasons to be argued at hearing, and for the reasons argued before the district court, the district court properly dismissed the FAC against the FCSB Appellees and that judgment should be affirmed.

Respectfully submitted this 11th day of December 2023.

FAIRFAX COUNTY SCHOOL BOARD and DR. MICHELLE REID

<table>
<tr><td>_____/s/_____</td><td>_____/s/_____</td></tr>
<tr><td>Julia B. Judkins, VSB# 22597</td><td>Jeanne-Marie Burke, VSB#41820</td></tr>
<tr><td>Assistant Division Counsel</td><td>Assistant Division Counsel</td></tr>
<tr><td>Fairfax County Public Schools</td><td>Fairfax County Public Schools</td></tr>
<tr><td>8115 Gatehouse Road</td><td>8115 Gatehouse Road</td></tr>
<tr><td>Falls Church, VA 22042</td><td>Falls Church, VA 22042</td></tr>
<tr><td>Telephone: 571-423-1035</td><td>Telephone: 571-423-1035</td></tr>
<tr><td>Fax: 571-423-1257</td><td>Fax: 571-423-1257</td></tr>
<tr><td>jbjudkins@fcps.edu</td><td>jsburke@fcps.edu</td></tr>
<tr><td>*Counsel for the FCSB*</td><td>*Counsel for the FCSB*</td></tr>
<tr><td>*Defendants-Appellees*</td><td>*Defendants-Appellees*</td></tr>
</table>

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains 7,013 words; and

This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: December 11, 2023

        /s/
Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants-Appellees*

        /s/
Jeanne-Marie Burke, VSB#41820
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
jsburke@fcps.edu
*Counsel for the FCSB Defendants-Appellees*

31

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: December 11, 2023

/s/

Julia B. Judkins, VSB# 22597
Assistant Division Counsel
Fairfax County Public Schools
8115 Gatehouse Road
Falls Church, VA 22042
jbjudkins@fcps.edu
*Counsel for the FCSB Defendants-Appellees*