No. 23-1854

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

D.C., by his parents and guardians; TREVOR CHAPLICK; VIVIAN
CHAPLICK; HEAR OUR VOICES, INC., on behalf of themselves and
all others similarly situated; JAMES BINGHAM; M.B., by his parents
and guardians, James Bingham and Sheila Bingham; SHEILA
BINGHAM,

*Plaintiffs-Appellants,*

v.

FAIRFAX COUNTY SCHOOL BOARD; VIRGINIA DEPARTMENT OF
EDUCATION; DR. MICHELLE REID, Superintendent of Fairfax
County Public Schools, in her official capacity; LISA COONS,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia

———————————

**BRIEF FOR APPELLEES**
**VIRGINIA DEPARTMENT OF EDUCATION AND LISA COONS**

———————————

JASON S. MIYARES
 *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

ANDREW N. FERGUSON
 *Solicitor General*

*Counsel for Defendants-Appellees*
*Virginia Department of Education*
*and Lisa Coons*

December 11, 2023

*(Additional counsel listed on inside cover)*

Jackie Lynn White, II
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
T: (703) 712-5474

Farnaz Farkish
Thompson
MCGUIREWOODS LLP
888 16th Street, NW
Washington, DC 20006
T: (202) 857-2488

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4746

*Counsel for Defendants-Appellees*
*Virginia Department of Education and Lisa Coons*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1854__        Caption: __D.C., et al. v. Fairfax County School Board, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Virginia Department of Education; Lisa Coons__
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:


3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:


i

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian D. Schmalzbach                         Date:      12/11/2023

Counsel for: Virginia Department of Education and Lisa Coons

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................... 1

STATEMENT OF ISSUES ..................................................... 4

STATEMENT OF THE CASE ................................................. 4

I.    Statutory and Regulatory Background ............................... 4

II.   Factual Allegations ....................................................... 8

     A.   HOV ...................................................................... 8

     B.   D.C. and the Chaplicks ........................................... 9

         1.   2015 Dispute Over Placement in Public School Setting ................................................................. 9

         2.   2020 Dispute Over Residential Placement for the 2020–2021 School Year .......................................... 10

         3.   2021 Dispute Over D.C.'s Change of Location ........... 11

     C.   M.B. and the Binghams ......................................... 12

III.  Procedural History ..................................................... 13

STANDARD OF REVIEW .................................................... 16

SUMMARY OF ARGUMENT ................................................ 17

ARGUMENT .................................................................... 19

I.    The district court correctly held that the Chaplicks failed to exhaust their administrative remedies. ........................... 19

     A.   Administrative exhaustion is mandatory because the Chaplicks seek IDEA relief. .................................... 20

     B.   The futility exception does not apply. ....................... 23

         1.   Exhaustion would not have been futile here. ............. 24

a.    The IDEA does not have a "systemic" exception to the exhaustion requirement. .......... 25

b.    No systemic exception would apply here in any event. ............................................. 30

2.    Exhaustion is not practically futile either. ................. 33

C.    There is no doctrine of vicarious IDEA exhaustion. ............. 35

II.    The district court properly dismissed the Binghams' duplicative claims. ................................................................ 37

A.    The district court did not abuse its broad discretion in dismissing claims that are substantially similar to those in M.B.'s first-filed IDEA lawsuit. ......................................... 38

B.    Res judicata arguments that were neither pressed nor passed upon below are no basis for reversing the dismissal of duplicative litigation. ......................................... 43

III.    The district court correctly dismissed HOV for lack of Article III standing. ................................................................ 45

A.    HOV lacks standing to sue on behalf of its members. .......... 45

B.    HOV also lacks standing to sue on its own behalf. ............. 48

IV.    This Court can affirm on the alternate ground that Plaintiffs' claims are meritless. ................................................ 51

A.    Plaintiffs fail to state a due process claim. .......................... 52

1.    Plaintiffs cannot assert an IDEA claim under the guise of due process. ..................................................... 52

2.    Plaintiffs received all process due. ............................. 54

B.    Plaintiffs fail to state an equal protection claim. ................ 55

1.    Plaintiffs allege no plausible better-treated comparator. ................................................................ 56

iv

2.    Plaintiffs allege no intentional or purposeful discrimination. ...........................................58

3.    Plaintiffs' claims are subject to easily satisfied rational-basis review. ...................................59

C.    Plaintiffs fail to state an IDEA claim..................................60

1.    Plaintiffs solely allege procedural violations of the IDEA. .................................................60

2.    Plaintiffs assert no violations of VDOE's IDEA duties. .................................................63

CONCLUSION ...................................................64

CERTIFICATE OF COMPLIANCE ......................................66

CERTIFICATE OF SERVICE.................................................67

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Albemarle Paper Co. v. Moody,*
    422 U.S. 405 (1975) .................................................................... 36

*Ass'n for Cmty. Living in Colorado v. Romer,*
    992 F.2d 1040 (10th Cir. 1993) .................................................... 29, 30

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental
    Health & Mental Retardation Ctr. Bd. of Trs.,*
    19 F.3d 241 (5th Cir. 1994) .......................................................... 49

*K.J. ex rel. B.J. v. Fairfax Cnty. Sch. Bd.,*
    361 F. App'x 435 (4th Cir. 2010) ................................................ 61

*Baatz v. Columbia Gas Transmission, LLC,*
    814 F.3d 785 (6th Cir. 2016) ........................................................ 38

*Bd. of Educ. v. Rowley,*
    458 U.S. 176 (1982) ...................................................................... 5

*Bell v. Brockett,*
    922 F.3d 502 (4th Cir. 2019) ........................................................ 43

*Matter of Beverly Hills Bancorp,*
    752 F.2d 1334 (9th Cir. 1984) ...................................................... 58, 59

*Bouabid v. Charlotte-Mecklenburg Sch. Bd. of Educ.,*
    62 F.4th 851 (4th Cir. 2023) ........................................................ 35

*Camac v. Long Beach City Sch. Dist.,*
    No. 2:09-CV-5309, 2011 U.S. Dist. LEXIS 79997
    (E.D.N.Y. July 22, 2011) .............................................................. 57

*Carmona v. N.J. Dep't of Educ.,*
    No. 22-2874, 2023 WL 5814677 (3d Cir. Sept. 8, 2023) .............. 22, 23

*Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,*
    587 F.3d 176 (3d Cir. 2009) .......................................................... 53

vi

*Chollet v. Brabrand,*
No. 22-1005, 2023 WL 5317961 (4th Cir. Aug. 18, 2023)................... 21

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.,*
68 F.4th 864 (4th Cir. 2023) .............................................................. 58

*A.B. ex rel. D.B. v. Lawson,*
354 F.3d 315 (4th Cir. 2004).............................................................. 61

*D.M. v. N.J. Dep't of Educ.*
801 F.3d 205 (3d Cir. 2015) ............................................................... 29

*MM ex rel. DM v. Sch. Dist. of Greenville Cnty.,*
303 F.3d 523 (4th Cir. 2002)....................................................... 5, 6, 30

*Doe v. The Citadel,*
No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023) ................. 59

*Episcopal Church in S.C. v. Church Ins. Co. of Vermont,*
997 F.3d 149 (4th Cir. 2021).............................................................. 16

*Equity in Ath., Inc. v. Dep't of Educ.,*
675 F. Supp. 2d 660 (W.D. Va. 2009) ................................................ 58

*K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.,*
741 F.3d 1195 (11th Cir. 2013).......................................................... 53

*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
28 F.3d 1268 (D.C. Cir. 1994) ............................................................ 49

*Fry v. Napoleon Cmty. Schs.,*
580 U.S. 154 (2017) ........................................................ 20, 25, 39, 40

*G.T. by Michelle T. v. Kanawha Cnty. Schs.,*
No. 2:20-cv-00057, 2020 WL 4018285
(S.D.W. Va. July 16, 2020)........................................................... 36, 37

*Gadsby by Gadsby v. Grasmick,*
109 F.3d 940 (4th Cir. 1997).............................................................. 63

*Hallinan v. Scarantino,*
No. 5:20-CT-3333, 2022 WL 945590 (E.D.N.C. Mar. 29, 2022) ......... 36

*Harris Cnty., Tex. v. CarMax Auto Superstores, Inc.*,
  177 F.3d 306 (5th Cir. 1999)................................................38

*Hartmann v. Loudoun Cnty. Bd. of Educ.*,
  118 F.3d 996 (4th Cir. 1997)................................................6

*Hawkins v. Freeman*,
  195 F.3d 732 (4th Cir. 1999)................................................59

*Heldman v. Sobol*,
  962 F.2d 148 (2d Cir. 1992)................................................32

*Hoeft v. Tucson Unified Sch. Dist.*,
  967 F.2d 1298 (9th Cir. 1992)........................26, 29, 31, 32

*Honig v. Doe*,
  484 U.S. 305 (1988)................................................24

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank*,
  793 F.2d 1541 (11th Cir. 1986)................................................39

*In re Int'l Bus. Machines Corp.*,
  618 F.2d 923 (2d Cir. 1980)................................................59

*Int'l Union, United Auto., Aerospace & Agric. Workers of
  Am. v. Brock*,
  477 U.S. 274 (1986)................................................47, 48

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*,
  566 F.3d 138 (4th Cir. 2009)................................................52

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*,
  580 U.S. 386 (2017)................................................57

*K.I. v. Durham Pub. Sch. Bd. of Educ.*,
  54 F.4th 779 (4th Cir. 2022)................................16, 23, 30

*Kendall v. Balcerzak*,
  650 F.3d 515 (4th Cir. 2011)................................................55

*Killoran v. Westhampton Beach Sch. Dist.*,
　No. 2:20-CV-4121, 2022 U.S. Dist. LEXIS 52169
　(E.D.N.Y. Mar. 22, 2022) ....................................................................... 57

*Know Your IX v. DeVos*,
　No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288
　(D. Md. Oct. 20, 2020) ........................................................................... 50

*Kolbe v. Hogan*,
　813 F.3d 160 (4th Cir. 2016) ................................................................. 56

*L.C. v. Utah State Bd. of Educ.*,
　125 F. App'x 252 (10th Cir. 2005) ....................................................... 34

*Lane v. Holder*,
　703 F.3d 668 (4th Cir. 2012) ......................................................... 49, 51

*Lartigue v. Northside Indep. Sch. Dist.*,
　__ F.4th__, 2023 WL 7869124 (5th Cir. Nov. 16, 2023) ............... 20, 23

*E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*,
　773 F.3d 509 (4th Cir. 2014) ......................................................... 19, 26

*Luna Perez v. Sturgis Public Schools*,
　598 U.S. 142 (2023) ............................................... 17, 20, 21, 22, 23

*M.B. v. Fairfax Cnty. Sch. Bd*,
　No. 22-cv-00930, 2023 WL 5367524
　(E.D. Va. Aug. 22, 2023) ....................................................... 13, 40, 41

*M.G. v. Williamson Cnty. Schs.*,
　720 F. App'x 280 (6th Cir. 2018) .......................................................... 33

*Mathews v. Eldridge*,
　424 U.S. 319 (1976) ............................................................................... 52

*Milliken v. Bradley*,
　418 U.S. 717 (1974) ............................................................................... 25

*Morrison v. Garraghty*,
　239 F.3d 648 (4th Cir. 2001) ................................................................. 56

*North Carolina State Conf. of the NAACP v. Raymond,*
    981 F.3d 295 (4th Cir. 2020)................................................48

*Parent/Pro. Advoc. League v. City of Springfield,*
    934 F.3d 13 (1st Cir. 2019) ...............................................46

*Ridge v. Cessna Aircraft Co.,*
    117 F.3d 126 (4th Cir. 1997)..............................................43

*Robertson v. Apker,*
    700 F. App'x 301 (4th Cir. 2017) ...............17, 37, 38, 39, 44

*Rockville Cars, LLC v. City of Rockville, Maryland,*
    891 F.3d 141 (4th Cir. 2018)..............................................17

*Roe v. Healey,*
    78 F.4th 11 (1st Cir. 2023).................................24, 31, 32

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at
    Broadlands, LLC,*
    713 F.3d 175 (4th Cir. 2013)..............................................47

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
    411 U.S. 1 (1973)............................................................59

*Sanchez v. Arlington Cnty. Sch. Bd.,*
    58 F.4th 130 (4th Cir. 2023) .............................................25

*Sch. Committee of Town of Burlington, Mass. v. Dep't of
    Educ. of Mass.,*
    471 U.S. 359 (1985)........................................................22

*Scott v. United States,*
    328 F.3d 132 (4th Cir. 2003)..............................................52

*Sellers v. Sch. Bd. of Manassas,*
    141 F.3d 524 (4th Cir. 1998)..............................................53

*Shabazz v. Va. Dep't of Corr.,*
    No. 3:10-CV-638, 2011 WL 4025264 (E.D. Va. Sept. 9, 2011) ...........36

*Sierra Club v. Morton,*
   405 U.S. 727 (1972) ................................................................. 48

*Smith v. SEC,*
   129 F.3d 356 (6th Cir. 1997) ................................................... 39

*Stone v. Univ. of Md. Med. Sys. Corp.,*
   855 F.2d 167 (4th Cir. 1988) ................................................... 52

*Student A v. San Francisco Unified Sch. Dist.,*
   9 F.4th 1079 (9th Cir. 2021) ................................... 24, 30, 31

*T.B. v. Prince George's Cnty. Bd. of Educ.,*
   897 F.3d 566 (4th Cir. 2018) ................................................... 60

*T.R. v. Sch. Dist. of Phila.,*
   4 F.4th 179 (3d Cir. 2021) ....................................................... 31

*Tankersley v. Almand,*
   837 F.3d 390 (4th Cir. 2016) ................................................... 52

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ............................................................. 45

*Tri Cnty. Paving, Inc. v. Ashe Cnty.,*
   281 F.3d 430 (4th Cir. 2002) ................................................... 55

*United Food & Com. Workers Union v. Brown Grp., Inc.,*
   517 U.S. 544 (1996) ................................................................. 47

*United States v. Lopez,*
   514 U.S. 549 (1995) ................................................................. 25

*United States v. Olvis,*
   97 F.3d 739 (4th Cir. 1996) ..................................................... 56

*Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.,*
   507 F.3d 290 (4th Cir. 2007) ................................................... 56

*Washington v. Davis,*
   426 U.S. 229 (1976) ......................................................... 58, 62

*Williams v. Hansen,*
   326 F.3d 569 (4th Cir. 2003)................................................58

*Winthrow v. Larkin,*
   421 U.S. 35 (1975)................................................33

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1................................................55

**Statutes**

20 U.S.C. § 1400(d)(1)(A)................................................5

20 U.S.C. § 1401(9)................................................5

20 U.S.C. § 1412(a)(1)(A)................................................5

20 U.S.C. § 1413(d)(3)................................................27

20 U.S.C. § 1414................................................5, 34, 35

20 U.S.C. § 1415................................................6, 17, 19, 20, 22, 23, 26

42 U.S.C. § 1983................................................12, 13, 14, 53

Va. Code § 22.1-214................................................5

**Other Authorities**

34 C.F.R. § 300.28................................................63

34 C.F.R. § 300.511(c)(2)................................................34

8 Va. Admin. Code § 20-81-110................................................5, 64

8 Va. Admin. Code §§ 20-81-170, 20-81-190–210................................................6

8 Va. Admin. Code § 20-81-210................................................7, 27, 28, 34, 62

11A C. Wright, A. Miller, & M. Kane,
   Federal Practice and Procedure § 2942 (2d ed. 1995)................................................39

Kan. Admin. Regs. § 91-40-29(b)(2)................................................62

N.H. Code Admin. R. Ed 1123.24(a) ..................................................... 62

Virginia Hearing Officer System Rules of Administration, available
    at https://www.vacourts.gov/programs/ho/rules_of_admin.pdf........ 7, 8

## INTRODUCTION

This lawsuit started with two families' dissatisfaction over one county's proposals to accommodate their children with disabilities under the Individuals with Disabilities in Education Act ("IDEA"). The IDEA implements free appropriate public education for children with disabilities while balancing an unfortunate reality: not all parents' wishes can be accommodated. The IDEA provides a solution for disputes between parents and schools on how IDEA should be implemented for a particular student. Under the IDEA's cooperative-federalism model, Virginia provides an administrative process—with access to judicial review—for resolving those disputes. But both families refused to follow that orderly process.

Instead, these Plaintiffs launched this putative class action demanding that a federal court raze the Commonwealth's administrative process for resolving IDEA claims. They cherry-pick statistics to try to show that Virginia's administrative hearing officers are engaged in a conspiracy to deprive all IDEA claimants of a fair hearing. And they try to pin the blame for local functions on a state agency (the Virginia

Department of Education ("VDOE") and a state officer (Superintendent Lisa Coons)).

Plaintiffs seek to justify this flawed approach based on the same ominous warning rejected below: if this Court does not run roughshod over the ordinary rules of the road in IDEA and civil litigation, then families like these will have no recourse. The district court correctly rejected that argument and dismissed each of these Plaintiffs.

First, the Chaplicks' claims are barred by their undisputed failure to exhaust his administrative remedies. The IDEA's exhaustion requirement is strict, and no exception excuses their decision to skip past the mandatory administrative process straight to federal court. Indeed, Virginia offers an administrative pathway, including review by the Supreme Court of Virginia, to remove the very hearing officers Plaintiffs claim are biased, but Plaintiffs used none of those available state mechanisms for resolving their grievances.

Second, the Binghams' claims were sensibly dismissed for duplicating the IDEA claims in their parallel lawsuit. Although the Binghams did exhaust their administrative remedies, they then tried to split their grievances into multiple federal actions. The district court

2

acted well within its broad discretion to require the Binghams to proceed in their first-filed lawsuit.

Third, the Chaplicks' and Binghams' organization Hear Our Voices Inc. ("HOV") lacks Article III standing. HOV cannot sue as a representative of those members to circumvent the deficiencies in the members' claims. And HOV cannot sue in its own right because an advocacy organization is not injured by choosing to engage in advocacy.

As the district court noted, this dismissal was the fruit of Plaintiffs' questionable litigation decisions. The district court's narrow opinion looked no further than Plaintiffs' procedural defects, and this Court can affirm on those narrow grounds. This Court can also affirm on the fully briefed ground that Plaintiffs' claims are meritless. They allege no plausible systemic bias by hearing officers, no IDEA violations for which VDOE is responsible, and no plausible due process deprivations or equal protection violations. Judicial economy warrants stopping this meritless theory now.

## STATEMENT OF ISSUES

I.     Did the district court correctly dismiss the claims of D.C. and the Chaplicks because of their undisputed failure to exhaust administrative remedies as required by the IDEA?

II.     Did the district court properly exercise its discretion in dismissing the claims of M.B. and the Binghams under the duplicative litigation doctrine because their IDEA claims are substantially similar to those in the Binghams' earlier-filed lawsuit before the same court?

III.     Did the district court correctly hold that the Chaplicks' and Binghams' organization lacks Article III standing because an organizational plaintiff may not be used to circumvent the defects in its members' individual claims and because an organization is not injured by pursuing the sort of advocacy it was formed to pursue?

IV.     Did Plaintiffs fail to state a claim for violating the IDEA, due process, or equal protection?

## STATEMENT OF THE CASE

## I.     Statutory and Regulatory Background

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public

education." 20 U.S.C. § 1400(d)(1)(A); Va. Code § 22.1-214. The IDEA sends federal funding to States to provide schoolchildren with disabilities with a FAPE. 20 U.S.C. § 1412(a)(1)(A). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child . . . supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982); 20 U.S.C. § 1401(9). A FAPE is implemented through an individualized education plan ("IEP"). *Id.* at 182.

IDEA requires local educational agencies ("LEAs") to provide an IEP for each child with a disability. *Id.* at 181–82; 8 Va. Admin. Code § 20-81-110(A). The IEP is created by an "IEP team," consisting of parents and educational professionals. 20 U.S.C. § 1414(d)(1)(B). Together, they work to craft an appropriate, individualized plan for each student. *Id.* § 1414(d)(3). An IEP is sufficient if it is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207. A school division satisfies the FAPE requirement when it provides personalized instruction with sufficient support services for the child to benefit educationally from the instruction. *MM ex rel. DM v.*

*Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 527 (4th Cir. 2002) (citing *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997)). The IDEA does not require a LEA to provide a child with a disability with the education that his or her parents prefer. *MM*, 303 F.3d at 526–27; *Hartmann*, 118 F.3d at 1001 (internal quotations omitted) (clarifying that the IDEA does not require the "furnishing of every special service necessary to maximize each handicapped child's potential."). Rather, if an LEA is providing a FAPE, IDEA does not require the LEA to offer additional educational services. *MM*, 303 F.3d at 526–27.

The IDEA establishes certain procedural safeguards to ensure the provision of FAPE by a state education agency ("SEA") or LEA. 20 U.S.C. § 1415; 8 Va. Admin. Code §§ 20-81-170, 20-81-190–210. One such safeguard is the opportunity for an impartial due process hearing to challenge the sufficiency of an IEP. *MM*, 303 F.3d at 527 (citing 20 U.S.C. § 1415(f)). After filing notice of a complaint, if the parties cannot reach an agreement, the matter proceeds to an administrative hearing before a special education hearing officer. 20 U.S.C. § 1415(c)(2); *id.* § 1415(f)(1)(A). Any party may appeal a hearing officer's decision within

180 days in state court or within 90 days of the decision in federal court.  8 Va. Admin. Code § 20-81-210(T).

VDOE "uses the impartial hearing officer system that is administered by the Supreme Court of Virginia."  8 Va. Admin. Code § 20-81-210(B).  The Executive Secretary of the Supreme Court of Virginia manages the list of eligible hearing officers and "has the authority to remove hearing officers…on his own initiative or upon the request of a party to an administrative matter heard by the hearing officer whose removal is sought." Virginia Hearing Officer System Rules of Administration ("Hrg. Officer Sys."), Rule 4(A), available at https://www.vacourts.gov/programs/ho/rules_of_admin.pdf.   A party seeking removal must make their request "in the form of a letter" to the Executive Secretary accompanied by "(i) an affidavit sworn by the requesting party before a notary public, stating with particularity the grounds upon which it is claimed the hearing officer should be removed, and (ii) a statement that the letter and affidavit were sent, by certified mail, to the hearing officer involved." Hrg. Officer Sys. R. 4(A)(3).  The hearing officer then may submit a written response and request a hearing. *Ibid.* If a hearing is held, the requesting party, hearing officer,

and Executive Secretary can call and cross-examine witnesses under oath, put on evidence, and present argument. Hrg. Officer Sys. R. 4(A)(4). The Executive Secretary then must issue a decision on removal within twenty days of the hearing. Hrg. Officer Sys. R. 4(A)(3).

## II. Factual Allegations

### A. HOV

HOV is a private, nonprofit member organization incorporated in Delaware that advocates for the rights of individuals with developmental disabilities. JA25. HOV analyzes laws affecting individuals with disabilities and offers educational resources to parents related to IDEA processes. JA26–27. Its principal mission is to secure appropriate and equal educational services for students with disabilities and to achieve better lives and educations for children with disabilities and special needs and their families. JA25, JA28. HOV also engages in lobbying efforts on special education issues and special education legislation. JA25, JA26. HOV's co-plaintiffs—the Chaplicks and the Binghams—are its only identified members. JA25.

## B.    D.C. and the Chaplicks

### 1.    2015 Dispute Over Placement in Public School Setting

D.C. is a nineteen-year-old whom Fairfax County Public Schools ("FCPS") found eligible for special education services in 2008. JA21–22. On June 26, 2015, the Chaplicks filed a request for a due process hearing, challenging FCPS's placement of D.C. in a public-school setting. JA22. After a full due process hearing, a hearing officer issued a decision on September 9, 2015 in FCPS's favor. JA49. The Chaplicks then entered into a December 8, 2015 settlement agreement with FCPS, under which FCPS provided financial support for D.C. to attend the day program at the Grafton Integrated Health Network's Integrated Residential/Education Program ("Grafton"), while the Chaplicks and an insurance policy paid the residential costs. JA50–51. Upset with the decision, the Chaplicks' attorney wrote a letter to Sheila Gray, the official overseeing VDOE's Office of Dispute Resolution and Administrative Services, accusing the hearing officer of having made a "biased and legally misinformed" decision. JA49–50; *see also* JA147–48.

2.    **2020 Dispute Over Residential Placement for the 2020–2021 School Year**

On September 1, 2020, D.C.'s parents requested that FCPS support both D.C.'s day program and residential placement at Grafton. JA51. After convening IEP meetings to discuss the requested change with the Chaplicks and Grafton staff, FCPS recommended continuing only the day placement at Grafton. JA51. FCPS did not agree with the Chaplicks' recommendation for a residential placement at Grafton. JA51.

On February 12, 2021, the Chaplicks made a formal request for a due process hearing alleging that FCPS had failed to propose an appropriate residential program and placement for the 2020-2021 school year. JA52. Although counsel for the Chaplicks made an "oral motion" requesting the hearing officer assigned to the due process hearing to recuse herself, the Chaplicks never formally pursued the hearing officer removal process, or filed any affidavit with the Executive Secretary of the Supreme Court of Virginia, as required under 8VAC20-81-210(H). *See* JA52–54. Neither did the Chaplicks ultimately resume pursuing their due process request that they had initially requested in February 2021, or take part in any due process hearing regarding D.C.'s placement for the 2020-2021 school year. *See* JA52–54.

10

About six months later, after holding additional IEP meetings with the Chaplicks, on August 4, 2021, FCPS agreed with the Chaplicks that D.C. required residential placement and approved him for residential placement at Grafton. JA94.

### 3. 2021 Dispute Over D.C.'s Change of Location

A month later, on September 16, 2021, the Chaplicks wanted to change D.C.'s location from Grafton to a new group home. JA94. The Chaplicks notified FCPS that they would be moving D.C. to a ResCare group home on October 7, 2021, and asked if another IEP meeting was necessary. JA94. FCPS told the Chaplicks that another IEP meeting was unnecessary, but disagreed that a location change was necessary for D.C. JA95. Yet in accordance with the Chaplicks' request to change D.C.'s location, FCPS changed D.C.'s placement because D.C. would be living in another facility that was not associated with Grafton, and FCPS would no longer be able to implement D.C.'s agreed-upon IEP. JA94–95. In D.C.'s new placement arrangement, D.C. would still receive a day program placement at Grafton, but D.C. would not receive residential placement at Grafton, as he would be living in another group home that the Chaplicks selected. JA95. In a letter dated October 12, 2021,

addressed to FCPS's outside counsel, the Chaplicks stated that FCPS's placement decision violated special education laws.  JA95.  Nowhere in the FAC do the Chaplicks or D.C. allege that they actually requested a due process hearing to challenge FCPS's placement decision.

### C.    M.B. and the Binghams

M.B. is a fifteen-year-old student with educational disabilities. JA23.  In 2013, FCPS found M.B. eligible for special education services and provided him with an IEP that placed him in a public-school setting. JA23–24.  In fall 2021, the Binghams placed M.B. at the Phillips School, a private day school.  JA24.  In January 2022, the Binghams filed a request for a due process hearing, challenging FCPS's IEPs and placements for M.B. for the 2018–2019, 2019–2020, and 2020–2021 school years.  JA24.  On May 17, 2022, at the end of a due process hearing, a hearing officer found that FCPS's IEPs and placements provided M.B. with a FAPE and denied the Binghams relief.  JA24–25.

A month before filing their first complaint in this suit, M.B. and the Binghams filed a lawsuit in the Eastern District of Virginia under the IDEA and 42 U.S.C. § 1983 also concerning the alleged denial of M.B.'s FAPE.  Complaint ¶¶ 1–2, *M.B. v. Fairfax Cnty. Sch. Bd.*, Dkt. 5, No. 22-

cv-00930 (E.D. Va.). That suit challenged FCPS's decisions not to modify M.B.'s IEP and not to reimburse his tuition at a private school. The Binghams argued that the hearing officer's findings were "not regularly made" and ignored evidence that FCPS mischaracterized M.B.'s academic progress and downplayed his disabilities. *M.B.* Compl. ¶¶ 15, 106–14. The Binghams also contended that the hearing officer lacked an "impartial understanding of the facts" and improperly disregarded the Binghams' experts' testimony. *M.B.* Compl. ¶¶ 108, 123. The district court rejected those arguments, praising the hearing officer's 59-page decision that went above and beyond the requirements of the IDEA. *M.B. v. Fairfax Cnty. Sch. Bd*, No. 22-cv-00930, 2023 WL 5367524, at *8 (E.D. Va. Aug. 22, 2023). The Binghams did not appeal the district court's judgment.

## III. Procedural History

Plaintiffs' First Amended Complaint raises claims under the IDEA and Section 1983 concerning the provision of FAPE to the Binghams and Chaplicks. Plaintiffs assert four claims against VDOE and its

superintendent (collectively, the "VDOE Defendants").[1]   In Count I, Plaintiffs argue that, in violation of 42 U.S.C. § 1983, Superintendent Coons denied Plaintiffs' due process rights by failing to provide constitutionally protected property interests and procedures consistent with the requirements of the IDEA. JA107–09. Count II asserts that in violation of Section 1983, Superintendent Coons denied Plaintiffs the equal protection of the law by singling them out for the denial of procedural due process and the right to education. JA109–10. Count III seeks a declaratory judgment that the VDOE violated the IDEA by failing to ensure that children in the Commonwealth of Virginia receive a FAPE. JA111–12. And Count IV asks this Court to enjoin the VDOE from continuing practices that allegedly violate the IDEA. JA112–15.

Defendants filed motions to dismiss, which the district court granted. First, the district court held that the Chaplicks failed to "exhaust their administrative remedies by challenging [FCPS's] decision through a due-process hearing." JA225. It "reject[ed] Plaintiffs' invitation to apply a lowered exhaustion standard" to so-called "systemic"

---

[1] Superintendent Coons was substituted as a defendant after replacing the previous superintendent.

14

claims because the Fourth Circuit does not apply "that modified standard." JA225–26. And the district court rejected Plaintiffs' futility argument that rested on statistics about the frequency that hearing officers rule for IDEA claimants, and on the Chaplicks' experience with a particular hearing officer. JA226. "None of those things [is] enough to overcome the 'presumption of honesty and integrity' that hearing officers enjoy," the district court explained, so "Plaintiffs' speculations" did not render administrative exhaustion futile. JA226.

Second, the district court exercised its discretion to dismiss the Binghams' claims as duplicative of their "administrative appeal that is currently pending before another judge in this courthouse." JA226–27. It explained that the claims in the Binghams' respective lawsuits "are substantially similar" in that "the family makes almost identical factual allegations" and both cases "seek to undo the hearing officer's determination on M.B.'s IEP request." JA227. Allowing the Binghams to proceed on parallel tracks thus "would create a risk of dueling decisions coming from judges in the same courthouse." JA227.

Third, the district court held that HOV lacked Article III standing to sue either as the representative of its members or in its own right.

15

JA218. As to representational standing, the district court found that "HOV cannot stand in the shoes of its members"—the Chaplicks and the Binghams. JA218. Those members "may not have been able to bring these claims on their own behalf" because they had either failed to exhaust their claims or brought duplicative litigation in the same courthouse. JA219. And the district court held that HOV could not sue on its own behalf because it established no cognizable injury in fact. HOV's mission is "'securing appropriate and equal education services for students with disabilities,'" and HOV "pursues its (admittedly noble) goals 'through assistance, advocacy, and legislative efforts.'" JA221 (quoting JA25). Thus, "HOV is an advocacy organization; and as such, it is not injured simply because Defendants' action compelled the organization to do the very thing it was formed to do." JA221.

## STANDARD OF REVIEW

Article III standing and administrative exhaustion are questions of law that this Court reviews de novo. *See Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 154 (4th Cir. 2021); *K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 788 (4th Cir. 2022). The Court reviews the dismissal of duplicative litigation for abuse of

discretion. *See Robertson v. Apker*, 700 F. App'x 301, 302 (4th Cir. 2017)

("Trial courts are afforded broad discretion in determining whether to

stay or dismiss litigation in order to avoid duplicating a proceeding

already pending in another federal court."); *accord* Opening Br. 37.

Plaintiffs' failure to state a claim for violation of due process, equal

protection, and the IDEA is a pure question of law reviewed de novo. *See*

*Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145

(4th Cir. 2018).

## SUMMARY OF ARGUMENT

I.    The district court correctly dismissed the Chaplicks' claims

because they failed to administratively exhaust their claims as the IDEA

requires.  20 U.S.C. § 1415(*l*) (mandating that the IDEA's administrative

procedures "*shall* be exhausted" (emphasis added)).  Their failure to

exhaust is undisputed.  The only question, then, is whether the law

dispenses with the exhaustion requirement in this case.  It does not.

No exhaustion exceptions apply in this case.  First, the Chaplicks

seek classic IDEA declaratory and injunctive relief rather than

compensatory relief.  The exhaustion exception announced in *Luna Perez*

*v. Sturgis Public Schools*, 598 U.S. 142 (2023), for FAPE-related claims

that seek relief unavailable under the IDEA therefore does not apply here. Second, the futility exception does not apply because Virginia offers an administrative process for challenging purported hearing officer bias; because there is no "systemic" exception to the exhaustion requirement; and because Plaintiffs do not allege systemic violations. Third, the IDEA does not allow "vicarious" exhaustion, and that theory would not apply to named Plaintiffs like the Chaplicks in any event.

II.    The district court also properly dismissed the Binghams' claims under the duplicative litigation doctrine. The Binghams' two simultaneous IDEA lawsuits in the same courthouse were substantially similar—the standard that the Binghams urged the district court to adopt. Those two lawsuits both concerned alleged procedural shortcomings in the hearing officer's assessment, and both sought the same classic IDEA relief. The district court did not abuse its broad discretion in dismissing the second-filed lawsuit as duplicative. And Plaintiffs have waived any argument that the district court should have applied some stricter duplicative litigation standard based on their res judicata contentions raised for the first time on appeal.

III.    The district court correctly dismissed HOV's claims because it lacked Article III standing.  HOV had no associational standing to sue on behalf of its members because doing so would be an end run around the jurisdictional and procedural rules barring its members' claims.  And HOV lacked standing to sue on its own behalf because its mission is to represent the sort of students it seeks to represent here.  An advocacy organization cannot manufacture standing by choosing to spend resources on advocacy within its core mission.

## ARGUMENT

### I.    The district court correctly held that the Chaplicks failed to exhaust their administrative remedies.

The IDEA requires plaintiffs to administratively exhaust their claims before filing a civil action: "the [administrative] procedures under subsections (f) and (g) *shall* be exhausted."  20 U.S.C. § 1415(*l*) (emphasis added); *see also E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 513–14 (4th Cir. 2014) ("We have consistently held that a plaintiff must exhaust her administrative remedies before bringing such an action").  IDEA plaintiffs thus must (1) pursue "an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or

19

by the State educational agency," 20 U.S.C. § 1415(f)(1)(A), and, (2) if unsatisfied with the results of the hearing, "appeal" any decisions or findings "to the State educational agency," *Id.* § 1415(g)(1); *see Luna Perez*, 598 U.S. at 146.  The Chaplicks concede that they failed to exhaust those administrative remedies.   Opening Br. 17.   The district court correctly held that the Chaplicks' failure to exhaust their claims requires dismissal.  JA225–26.

### A.   Administrative exhaustion is mandatory because the Chaplicks seek IDEA relief.

The IDEA requires administrative exhaustion when (1) "the gravamen" of the suit is "the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education,'" *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017), and (2) the remedy sought is one available under the IDEA, *Luna Perez*, 598 U.S. at 150; *see also Lartigue v. Northside Indep. Sch. Dist.,* __ F.4th__, 2023 WL 7869124, at *3 (5th Cir. Nov. 16, 2023) (setting forth the two-part test).  Plaintiffs' claims are squarely subject to exhaustion.

The first requirement triggering the duty to exhaust is undisputed: the gravamen of their Complaint relates to alleged denial of a FAPE. JA225 n.3; *see also, e.g.*, JA107–08 (alleging deprivation of "their

property and liberty interest in FAPE"); JA111 (alleging that VDOE "has failed and continues to fail to ensure that all children with disabilities residing in the Commonwealth of Virginia receive a free appropriate public education").

Plaintiffs dispute only the second requirement. They contend that they do not seek a relief available under the IDEA because their claims are "systemic." Opening Br. 17. Citing *Luna Perez,* Plaintiffs contend they are excused from an administrative process that supposedly "cannot supply" the relief that they seek. *Id.* at 17–18.[2]

Plaintiffs seriously misread *Luna Perez*. At issue there was whether a student could rightfully seek compensatory damages under the Americans with Disabilities Act for failure to provide a FAPE without first exhausting the IDEA's administrative dispute resolution procedures. *Luna Perez*, 598 U.S. at 145. Because compensatory

---

[2] Plaintiffs float the possibility of vacating and remanding in light of *Luna Perez*. Opening Br. 18 n.1. There is no need for that. Unlike in *Chollet v. Brabrand*, No. 22-1005, where the availability of the requested remedy under the IDEA "was not briefed before the district court," 2023 WL 5317961, at *1 (4th Cir. Aug. 18, 2023), the parties extensively briefed the effect of *Luna Perez* here. JA8–9 (Dkts. 71, 75, 78, 84). And the district court already considered those briefs and gave the parties ample opportunity to address that issue at the hearing. JA186.

damages are not a form of "relief" available under the IDEA, the student was not required to exhaust his administrative remedies. *Id.* at 147–48 (interpreting 20 U.S.C. § 1415(*l*)). The Supreme Court refused to address the issues of whether "IDEA's exhaustion requirement is susceptible to a judge-made futility exception." *Id.* at 151.

The relief sought here is nothing like the compensatory damages addressed in *Luna Perez* that are unavailable under the IDEA. *Carmona v. N.J. Dep't of Educ.*, No. 22-2874, 2023 WL 5814677, at *3 n.7 (3d Cir. Sept. 8, 2023). Quite to the contrary, Plaintiffs seek traditional forms of IDEA relief: declaratory relief, injunctive relief, and attorneys' fees. JA120–25, JA127; 20 U.S.C. § 1415(i)(2)(C)(ii) (the courts "shall grant such relief as the court determines is appropriate"); (i)(3) (authorizing attorneys' fees); *Sch. Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985); *Carmona*, 2023 WL 5814677, at *3 n.7 (non-precedential) ("Courts have determined that IDEA's remedies include 'prospective injunctive relief' and 'retroactive reimbursement.'"). Indeed, the Binghams sought the same forms of relief in their administrative appeal. *M.B.* Compl. Prayer for Relief ¶¶ 2–5.

Moreover, *Luna Perez* is silent on the exhaustion requirement for putative "systemic" allegations.  In fact, *Luna Perez* cuts against such an exhaustion requirement for such allegations because it held that the IDEA's exhaustion requirement applies to all suits that "'see[k] relief ... also available under' IDEA."  598 U.S. at 147 (citing 20 U.S.C. § 1415(*l*)); *see also Lartigue,* 2023 WL 7869124, at *3 ("if the relief sought is of the type that the IDEA offers, then the plaintiff must fully exhaust the administrative process as required by § 1415(*l*)"); *Carmona*, 2023 WL 5814677, at *3 n.7 (looking to the "form" of relief requested).  *Luna Perez* is therefore inapposite to the application of IDEA exhaustion to the Chaplicks' claims.

### B.    The futility exception does not apply.

The Chaplicks next try to excuse their failure to exhaust by invoking futility—one of the "narrow exceptions to [the IDEA's] exhaustion requirement."  *K.I.*, 54 F.4th at 793 n.8.[3]  Plaintiffs bear the

---

[3] The Supreme Court has not addressed the futility exception, and there is reason to doubt "whether IDEA's exhaustion requirement is susceptible to a judge-made futility exception" in the first place.  *Luna Perez*, 598 U.S. at 151 (leaving this question open).

burden of proving futility. *Honig v. Doe*, 484 U.S. 305, 327 (1988). But they establish no futility excuse here.

### 1. Exhaustion would not have been futile here.

First, Plaintiffs argue that it would be legally futile for the Chaplicks to exhaust their claims in the administrative process because that process "is legally incapable of granting them the relief they seek." Opening Br. 17. Plaintiffs hinge their argument on the fact that they "seek wide-ranging systemic reform unavailable in the state administrative process." *Ibid.*

Plaintiffs urge this Court to adopt the so-called systemic-violation exception to the IDEA's exhaustion requirement. *See Student A v. San Francisco Unified Sch. Dist.,* 9 F.4th 1079, 1083–84 (9th Cir. 2021) (recognizing but not applying the systemic-violation exception); *compare Roe v. Healey*, 78 F.4th 11, 25 (1st Cir. 2023) (leaving open the question of the systemic-violation exception). While some circuits recognize a theoretical exception (seldom if ever applied), the Fourth Circuit has not created such an exception—nor should it. Adopting the systemic violation exception would contravene Congress's goals in requiring

24

administrative exhaustion of IDEA claims. And even if the Court were to recognize this exception, it would still not help the Chaplicks here.

### a. The IDEA does not have a "systemic" exception to the exhaustion requirement.

As the district court did, this Court should "reject[] Plaintiffs' invitation to apply a lowered exhaustion standard to claims that challenge entire systems." JA226. Instead, the Court should carry out Congress's intent and require Plaintiffs to exhaust their claims before suing.

*First,* the administrative exhaustion requirement is necessary to ensure the proper balance between state and federal control. The IDEA follows a model of "cooperative federalism." *Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 133 (4th Cir. 2023). It is a deal between the States and the federal government pursuant to which the federal government funds the States, and the States in turn agree to provide a FAPE to every child with a disability. *Fry*, 580 U.S. at 158. In doing so, the IDEA preserves the States' traditional role as the "sovereign" in matters of education. *United States v. Lopez*, 514 U.S. 549, 564 (1995); *see also Milliken v. Bradley*, 418 U.S. 717, 741 (1974) ("No single tradition in

public education is more deeply rooted than local control over the operation of schools.").

The administrative exhaustion requirement provides the States the first responsibility—and opportunity—to resolve any disputes between parents and school districts. 20 U.S.C. § 1415(*l*) (requiring exhaustion of state procedures before turning to federal courts). By doing so, the IDEA "recognize[s] the state's primary role in setting educational policy and resolving disputes under the statute." *E.L.,* 773 F.3d at 515. Therefore, "even where local school policies appear on their face to violate the IDEA, administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1307 (9th Cir. 1992).

Unless parties go through the administrative process, the States will have no opportunity to correct shortcomings where they appear. The statute itself explicitly contemplates the centrality of the administrative process to the States' administration of their own policies implementing the IDEA. As part of their oversight responsibilities, state educational agencies are required to "consider any decision made in a [due process] hearing…that is adverse to the local educational agency or State agency

26

involved in that decision." 20 U.S.C. § 1413(d)(3). Instead of following this process and allowing VDOE to first review the alleged bias of its hearing officers and, if necessary, correct any policies or remove any offending officers, the Chaplicks went directly to federal court to obtain an injunction. Permitting this course would disrupt the balance that Congress struck in the IDEA between federal and state authority.

Indeed, the Commonwealth of Virginia has established a procedure addressing the putative "systemic" issue at the center of Plaintiffs' Complaint. *See supra* at 4–7. That procedure—supervised by the Supreme Court of Virginia rather than VDOE—allows IDEA claimants like Plaintiffs to challenge the impartiality of hearing officers as Plaintiffs seek to do now. 8 Va. Admin. Code § 20-81-210(H); *see also* Opening Br. 29–33, 39 (alleging that Defendants "developed a 'kangaroo court system' replete with sham procedures, biased 'adjudicators,' and outcomes against the disabled students that are nothing more than foregone conclusions"). While the Chaplicks may have requested an assigned hearing officer to recuse herself, the Chaplicks failed to file a timely objection by filing an affidavit with the Executive Secretary of the Supreme Court of Virginia. That failure "to file a timely objection serves

27

as a waiver of objections that were known or should have been known to the party." 8 Va. Admin. Code § 20-81-210(H)(3)(a). The Commonwealth was therefore never able to consider their claims and, had it proven necessary, take appropriate corrective measures.[4]

Plaintiffs' attempt to frame their allegations as challenges to procedural policies does not excuse exhaustion. Among other allegations, Plaintiffs allege that VDOE fails: to provide "free public education" to students with disabilities; "to ensure that all children with disabilities residing in the Commonwealth of Virginia receive a free appropriate public education"; "to conduct comprehensive evaluations and reevaluations of any child suspected of having a disability"; "to ensure Virginia LEAs compose appropriate 'Individualized Education Program Teams'"; and "to require Virginia teachers, education administrators, and any other Virginia education employees to create and maintain accurate, complete, and timely records of a child's academic, emotional, and behavioral progress." JA110, JA111, JA113–14. As other circuits have found, "[f]ar from presenting purely legal issues, adjudicating the

_____

[4] Indeed, Plaintiffs acknowledge the effectiveness of the Supreme Court's review in alleging that "[i]n 2004, a hearing officer was disqualified from a due process hearing by the Supreme Court of Virginia." JA66.

28

validity of these policies requires a fact-specific inquiry into their operation in an individual case." *Hoeft*, 967 F.2d at 1306. In *Hoeft,* for example, the plaintiffs brought a class action challenge to a school district's "formal, written policies and informal, de facto policies" concerning the provision of services to children with disabilities. *Id.* at 1299. The Ninth Circuit required plaintiffs to exhaust their claims, finding that "[e]ligibility criteria [for providing services] and methodology are classic examples of … educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Id.* at 1305.

Likewise, the Tenth Circuit considered a case in which plaintiffs claimed that the Colorado Department of Education "arbitrarily predetermine[d]" the services available to students with disabilities thereby asserting a "facial violation of the IDEA's individualization requirement." *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1045 (10th Cir. 1993).[5] That court found that exhaustion was

---

[5] Plaintiffs contend (contrary to *Association for Community Living in Colorado*) that *D.M. v. N.J. Department of Education*, 801 F.3d 205 (3d Cir. 2015), excuses exhaustion whenever a state agency is sued. Opening Br. 22–23. Not so. In *D.M.,* plaintiffs sued *only* the state Department of Education. In this case, Plaintiffs sued both VDOE and FCPS. This

required because, to answer the question, "ultimately requires a determination as to whether any individual child was denied a free appropriate public education." *Ibid.* And, "[s]uch a determination is enhanced by the factual details of a particular child's case." *Ibid.* The same is true here. The Court would greatly benefit from an administrative record to "understand how the school district may have failed their students and how only a court, not the administrative agency, could remedy such failings." *Student A*, 9 F.4th at 1084.

### b.    No systemic exception would apply here in any event.

The systemic violation exception is narrow and is more often recognized in theory than applied in practice. In fact, despite having first recognized this theory some thirty years prior, the Ninth Circuit acknowledged in 2021 "[t]o our knowledge, no published opinion in this circuit has ever found that a challenge was 'systematic' and exhaustion not required." *Student A*, 9 F.4th at 1084. That still holds true today.

---

Court has consistently required exhaustion in cases against both a local educational agency and the state agency. *See, e.g.*, *K.I.,* 54 F.4th at 789 (requiring exhaustion in a case against the North Carolina State Board of Education); *MM*, 303 F.3d at 535–36 (requiring exhaustion in a case against the South Carolina State Board of Education).

Even if this court were to adopt the systemic violation exception, this case would not fall into it.

Earlier this year, the First Circuit declined to resolve whether the exception existed, and yet still required administrative exhaustion. *Roe*, 78 F.4th at 25–26. In *Roe,* children with disabilities and their parents sued the Governor of Massachusetts, the Massachusetts Department of Elementary and Secondary Education, and several school districts under the IDEA for the State's closure of in-person schooling during the COVID pandemic. *Id.* at 15. Plaintiffs claimed that they were deprived of a FAPE. *Ibid.* The *Roe* plaintiffs failed to exhaust their claims and, like the Plaintiffs here, attempted to invoke the systemic violation exception. *Id.* at 25. The First Circuit held that exhaustion was required, recognizing that "even courts that have recognized a systemic exception have cautioned that it is not met every time a plaintiff challenges centralized, uniform policies that affect all students within a school or school district." *Id.* at 25–26 (citing *T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 192 (3d Cir. 2021), *Hoeft,* 967 F.2d at 1304–05; *see also Student A,* 9 F.4th at 1084 ("a policy or practice is not necessarily 'systemic' or 'of general applicability' simply because it 'applie[s] to all students' or

because 'the complaint is structured as a class action seeking injunctive relief.'") (quoting *Hoeft*, 962 F.2d at 1304, 1309). Instead, the First Circuit found that this exception is reserved for when the challenged practice "has the practical effect of denying the plaintiffs a forum for their grievances." *Id.* at 26 (quoting *Hoeft*, 967 F.2d at 1304) (cleaned up).[6]

But here, the Chaplicks did have a forum; they simply declined to use it. The Chaplicks could have pursued their complaints in a due process hearing. In fact, in the past, the Chaplicks *had* used the due process procedure to reach a settlement with the school district regarding their son's education. JA22–23, JA50–51. And the Chaplicks could have challenged the alleged bias of the hearing officer in the Executive Secretary's proceedings but did not.

---

[6] Plaintiffs rely on *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992), which addressed a very different IDEA claim. *Heldman* involved a challenge to a New York state *statute* and implementing regulation permitting local school boards to appoint hearing officers. *Id.* at 151. The Second Circuit found that administrative exhaustion would be futile because a hearing officer would have no authority to alter a regulation or statute passed by the New York State Assembly. *Id.* at 159. Here, by contrast, Plaintiffs are not challenging a state statute or regulation itself. Instead, they are challenging the manner in which the regulation is implemented in specific cases. Unlike in *Heldman*, Plaintiffs seek no relief negating or overturning a law passed by the Virginia General Assembly.

## 2.    Exhaustion is not practically futile either.

The Chaplicks next argue that it would be practically futile for them to exhaust their claims, arguing that the hearing officers are irredeemably biased.  Opening Br. 16.  Plaintiffs argue that "hearing officers have a direct and substantial pecuniary interest that affects their impartiality in any given individual due process hearing."  *Id.* at 30 (citation and quotation marks omitted).  Presumably referring to VDOE, Plaintiffs claim that "hearing officers quickly learn not to bite the hand that feeds them" and that the hearing officer system "create an improper financial incentive *for all hearing officers.*"  *Id.* at 21, 30 (citation and quotation marks omitted).   Plaintiffs then point to statistics demonstrating how often parents prevail in due process hearings.  *Id.* at 31.  But the district court rightly made short work of this argument, since Plaintiffs' statistics and the Chaplicks' hearing officer's refusal to recuse herself were insufficient to "overcome the 'presumption of honesty and integrity' that hearing officers enjoy."  JA226.

As Plaintiffs concede, hearing officers enjoy a "presumption of honesty and integrity."  Opening Br. 29; *see also Winthrow v. Larkin,* 421 U.S. 35, 47 (1975); *M.G. v. Williamson Cnty. Schs.,* 720 F. App'x 280, 284

n.3 (6th Cir. 2018) (unpublished) (applying presumption to due process hearing officers); *L.C. v. Utah State Bd. of Educ.*, 125 F. App'x 252, 261 (10th Cir. 2005) (unpublished) (same). Plaintiffs do not remotely overcome this presumption.

*First*, the IDEA envisions a system like the one used in Virginia where the state education agency pays hearing officers. The United States Department of Education has long provided in its regulations that "[a] person who otherwise qualified to conduct a [due process] hearing" is not disqualified "solely because he or she is paid by the agency to serve as a hearing officer." 34 C.F.R. § 300.511(c)(2). And as described above, while VDOE pays hearing officers, the Supreme Court of Virginia—an independent and equal branch of government by dint of Virginia's Constitution—manages the hearing officer program and ensures its integrity. 8 Va. Admin. Code § 20-81-210(B). Plaintiffs have an independent forum (of which they have not availed themselves) in which to challenge allegedly biased hearing officers.

*Second*, Plaintiffs' statistics alone are not enough to overcome this presumption. The IDEA envisions a collaborative, rather than combative, process between parents and schools. 20 U.S.C.

34

§ 1414(b)(4)(A) ("the educational needs of the child shall be made by a team of qualified professionals and the parent of the child"); *see also Bouabid v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 62 F.4th 851, 862 (4th Cir. 2023) ("It is no wonder that Congress, in enacting the IDEA, opted for 'procedures [that] emphasize collaboration among parents and educators and require careful consideration of the child's individual circumstances.'"). Plaintiffs' cited statistics do not reflect the many compromises and consensus solutions collaboratively created by parents and educational professionals at the early stages of the process. And as Plaintiffs' statistics do show, from 2003 to 2021, a majority of cases were withdrawn or settled, indicating that parents were satisfied with the outcome. JA134. Plaintiffs center their complaints for "systematic bias" around the alleged actions of one hearing officer—Morgan Brooke-Devlin. But during this same time period, nearly 70% of her cases were withdrawn or settled. JA134. Plaintiffs' statistics alone are not enough to overcome the hearing officers' presumption of honesty.

### C. There is no doctrine of vicarious IDEA exhaustion.

Plaintiffs also argue that the doctrine of vicarious exhaustion excuses their failure to exhaust. Opening Br. 34. This is not so.

35

No court of appeals has ever held that IDEA claims can be vicariously exhausted. And with good reason. Unlike in the Title VII context, nothing in the IDEA statutory framework supports the notion of vicarious exhaustion. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (recognizing that Congress ratified a construction of Title VII permitting backpay to be awarded "on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members."). And Plaintiffs point to nothing in the IDEA's legislative history or statutory framework that could justify such an exception.

Even if vicarious exhaustion could apply in the IDEA context, it would not apply to *named* Plaintiffs like the Chaplicks. At most, vicarious exhaustion applies to absent class members after class certification. Courts within this circuit thus recognize that "plaintiffs who are not members of a certified class may not rely on vicarious exhaustion." *Shabazz v. Va. Dep't of Corr.*, No. 3:10-CV-638, 2011 WL 4025264, at *4 (E.D. Va. Sept. 9, 2011); *see also Hallinan v. Scarantino*, No. 5:20-CT-3333, 2022 WL 945590, at *13 (E.D.N.C. Mar. 29, 2022). And the Chaplicks cite no case applying vicarious exhaustion to named plaintiffs like them. *See G.T. by Michelle T. v. Kanawha Cnty. Schs.*, No.

2:20-cv-00057, 2020 WL 4018285, at *6 (S.D.W. Va. July 16, 2020) (cited at Opening Br. 35–36) (addressing vicarious exhaustion for absent class members after finding that *all* named plaintiffs had properly exhausted). A named plaintiff's desire to represent putative class members does not excuse that plaintiff's failure to satisfy the prerequisites for bringing suit.

## II.   The district court properly dismissed the Binghams' duplicative claims.

Whereas the Chaplicks sought to skip administrative exhaustion altogether, the Binghams sought to leverage their administrative exhaustion into *two* duplicate lawsuits in the same courthouse. Although the two lawsuits have different framing, the substance is the substantially the same: "In both cases, the family makes almost identical factual allegations." JA227. And "[b]oth cases seek to undo the hearing officer's determination on M.B.'s IEP request." JA227. That makes this lawsuit a classic example of duplicative litigation. The district court thus was well within its "broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating … proceeding[s] already pending in another federal court." *Robertson*, 700 F. App'x at 302.

37

### A. The district court did not abuse its broad discretion in dismissing claims that are substantially similar to those in M.B.'s first-filed IDEA lawsuit.

The district court correctly asked whether "the Binghams' claims in their administrative appeal are substantially similar to the ones made in this case." JA227. And it correctly answered that the respective claims are substantially similar.

First, the district court applied the correct standard of substantial similarity. That was the standard that Plaintiffs asked it to apply. MTD Opp. 28, Dkt. 65 (Mar. 3, 2023). And that is the right standard. *See, e.g.*, *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016) ("the issues need only to substantially overlap in order to apply the first-to-file rule"); *Harris Cnty., Tex. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (requiring only "substantial overlap of substantive issues"); *accord Robertson*, 700 F. App'x at 302 ("[T]he general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two

38

actions." (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986))).[7]

The district court was also right that the Binghams' respective claims are substantially similar. Both cases assert similar IDEA-based claims "that [M.B.'s] rights were violated when Defendants refused to modify his IEP determination and declined to pay his tuition at a private day school." JA217 n.1; *see also* JA225 n.3 (explaining that the exhaustion requirement applies to the constitutional claims because this lawsuit "'seeks relief for the denial of a FAPE'") (quoting *Fry*, 580 U.S. at

---

[7] Plaintiffs' excerpt from *Robertson* is misleading; *Robertson* did not state that a district court "abuses its discretion when it *dismisses* a case 'that is not truly duplicative' of another." Opening Br. 37 (emphasis added). Rather, *Robertson* said there is an abuse of discretion when a court "*enjoins a party from proceeding in another suit* that is not truly duplicative of the suit before it." 700 F. App'x at 302 (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)) (emphasis added); *see also Smith*, 129 F.3d at 362 ("[I]t requires clear justification before a federal court may interfere with the jurisdiction of another federal court." (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2942 at 59 n.43 (2d ed. 1995))). This case does not concern an anti-suit injunction requiring any heightened justification.

168).  And both cases seek similar relief: "to undo the hearing officer's determination on M.B.'s IEP request."  JA227.

The fundamental distinction, according to Plaintiffs, is that the Binghams do not seek reimbursement here.  Opening Br. 40.  Not so.  Their argument below confirms that they are seeking redress for that refusal to reimburse them.  *See, e.g.*, MTD Opp. 8 ("M.B.'s parents have plausibly alleged that Defendants' actions have compelled them to pay, *and continue to pay*, for a significant portion of the services to which their children are entitled under the IDEA" (citing JA104); MTD Opp. 10 ("Plaintiffs are being injured *now*, and may properly seek prospective relief to bring that injury to an end").  So the relief requested is indeed substantially similar.

Plaintiffs also assert that the administrative appeal was different because it addressed only the sufficiency of the evidence supporting the denial of reimbursement, whereas this case is about "procedural violation[s] and procedural inadequacies."  Opening Br. 38.  But the Binghams made procedural arguments in both cases.  The Binghams argued in the administrative appeal that the hearing officer's findings "were not regularly made" and thus not entitled to deference.  2023 WL

40

5367524, at *8. That district court rejected their argument because the hearing officer "conducted a proper hearing," "issued a thorough 59-page decision detailing her findings and analysis," and showed nothing "to indicate sloppiness or indifference or the desire … to simply rush out the door." *Ibid.* Indeed, the Binghams leveled many of the same procedural critiques in both cases:

| Allegations here | Corresponding allegations in *M.B. v. FCPS*, No. 22-cv-00930 |
|---|---|
| • Defendants "minimize evidence of students' disabilities, exaggerate their academic pro[gr]ess, and conceal other relevant information." Opening Br. 39 (quoting JA15). | • An FCPS evaluator "incorrectly identified [M.B.'s] level of accuracy as 'passing.'" Compl. ¶ 15.<br>• "The Hearing Officer ignored M.B.'s failure to master IEP goals, which demonstrates a clear lack of progress, instead finding that making progress toward the goals year after year is appropriate." Compl. ¶ 106.<br>• "The Hearing Officer erred in ignoring the results of the standardized testing, showing a lack of progress." Compl. ¶ 109. |
| • Defendants use "biased adjudicators." Opening Br. 39 (quoting JA16). | • "The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA … by failing to render a proper decision based on an accurate and *impartial* |

| | understanding of the facts." Compl. ¶ 123. |
|---|---|
| • Those biased adjudicators "disregard expert witness testimony offered by parents." Opening Br. 39 (quoting JA62). | • "The Hearing Officer erred in failing to give weight to the parents' experts' testimony." Compl. ¶ 108. |

The other allegations that supposedly distinguish this case from the administrative appeal have nothing to do with the Binghams even in *this* case. The Binghams make no allegation, for example, about the need to "use the Virginia Freedom of Information Act ('FOIA') to access information to which *they* are entitled under the IDEA." Opening Br. 39. And their own allegations contradict or disclaim that the Binghams endured other alleged deprivations. Far from having their advocates "improperly excluded … from IEP preparation sessions," the Binghams alleged that FCPS affirmatively "requested that additional information from the Phillips School be provided" and that "Staff from Phillips School attended [their IEP] meeting" to share their assessment of M.B.'s needs. *M.B.* Compl. ¶¶ 81, 88. Nor were the Binghams' "requests for evaluations" ignored, Opening Br. 39. To the contrary, the Binghams allege that "[b]ased on the parents' concerns with lack of progress, the school team proposed to update educational testing." *M.B.* Compl. ¶ 35.

The very allegations that Plaintiffs highlight thus confirm that the two cases are substantially similar.

### B. Res judicata arguments that were neither pressed nor passed upon below are no basis for reversing the dismissal of duplicative litigation.

Plaintiffs' primary argument, however, is one that they never raised below. For the first time on appeal, Plaintiffs urge that "the viability of their claims here should be evaluated … against well-established principles of res judicata." Opening Br. 40. Because Plaintiffs never asked the district court to apply those principles, *see id.* at 41, they have forfeited that argument. *See Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019) ("Appellants may not raise arguments on appeal that were not first presented below to the district court.").

Indeed, M.B. affirmatively *asked* the district court to apply the requirements of the duplicative litigation doctrine rather than res judicata. Thus "any error which may have resulted is nothing more than invited error and so is not reversible." *Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997). Plaintiffs asked the district court to examine "substantial similarity" under the "duplicative litigation doctrine," MTD Opp. 28 (quotation marks omitted)—not "identity" under

the claim preclusion doctrine, Opening Br. 41. Plaintiffs insisted that the district court had "'broad discretion in determining whether to stay or dismiss [duplicative] litigation.'" MTD Opp. 28 (quoting *Robertson*, 700 F. App'x at 302); *see also id.* at 29 ("a district court *may* dismiss, stay, or transfer a later-filed lawsuit in deference to the first filed action") (quotation marks omitted; emphasis in original). And they disclaimed that "this [is] a case where Plaintiffs seek to avoid an adverse decision in the prior-pending action." *Id.* at 30. Plaintiffs thus cannot seek to reverse the district court for accepting their own invitation to apply the duplicative litigation doctrine.

In any event, Plaintiffs cite no authority (and the Commonwealth is aware of none) that duplicative litigation dismissed under the "substantial similarity" test can be resurrected if the first-filed case is later terminated. Opening Br. 40. Nor does their argument support such a rule. Plaintiffs contend that the denial of their administrative appeal "mooted the district court's perceived hypothetical 'risk of dueling decisions coming from judges in the same courthouse.'" Opening Br. 37 (quoting JA227). To the contrary, "[b]oth cases seek to undo the hearing officer's determination on M.B.'s IEP request." JA227. The Binghams'

44

loss in their administrative appeal thus guaranteed that the win they sought here would create dueling decisions within the same courthouse.[8] This case was therefore a proper candidate for the duplicative litigation doctrine.

## III.    The district court correctly dismissed HOV for lack of Article III standing.

The district court correctly held that the Chaplicks' and Binghams' organization, HOV, lacked Article III standing.  HOV bears the burden of showing standing.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021).  The district court was right that HOV failed to show its standing to sue either on behalf of its members or in its own right.  JA218.

### A.    HOV lacks standing to sue on behalf of its members.

HOV's assertion of representational standing runs into the practical problem that dogged its only identified members—the Binghams and the Chaplicks.  JA28.  "'[P]rudential concerns often bar a third party from suing on behalf of others.'"  JA218–19 (quoting

---

[8] M.B.'s assertion that the "factual bases of [the claims in this action] were not yet known or knowable" and so could not have been raised in the administrative appeal is nonsense.  Opening Br. 44.  The original complaint here was filed less than a month after the administrative appeal was filed, and the cases were litigated in parallel for nearly a year.

*Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 33 (1st Cir. 2019)). The district court correctly identified that those prudential concerns made it inappropriate for HOV to sue on behalf of its members here: "HOV would be standing in the shoes of putative class members that may not have been able to bring these claims on their own behalf." JA219.

Allowing associational standing here would only invite individual plaintiffs to whitewash jurisdictional defects in their own claims by forming an ad hoc organizational plaintiff comprised only of those individual plaintiffs. For example, the IDEA's administrative exhaustion requirement makes it inappropriate for HOV to lead the charge on behalf of the Chaplick's unexhausted claims. JA219; *see also Parent/Pro*, 934 F.3d at 34 ("[I]t would not make sense to allow the organizations here to escape the exhaustion requirement for the students they are purportedly representing."); *ibid.* ("[A]ssociational standing in this type of suit would be inconsistent with the Congressional requirement of exhaustion in the IDEA, and indeed an easy way to circumvent it."). And "allowing HOV to sue on behalf of [the] Binghams does not cure the fact that those claims are duplicative and undercut the interest in judicial efficiency." JA219.

Plaintiffs now argue that the district court "disregarded the settled principles of associational standing" by refusing to let HOV circumvent those problems with its members' claims.[9]  Opening Br. 51.  Plaintiffs do not dispute that the First Circuit's decision in *Parent/Professional Advocacy League* is right on point.  Instead, they contend that *Int'l Union, United Auto., Aerospace & Agric. Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986) ("*UAW*"), somehow overcomes subsequent Supreme Court decisions considering "administrative convenience and efficiency" in associational standing.  *See, e.g.*, *United Food & Com. Workers Union v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996).  *UAW* of course does not control over those later Supreme Court decisions.  And in any event, *UAW* addressed an organization composed of many individuals with

---

[9] Plaintiffs contend the district court erred in holding that HOV lacks standing after holding that at least one member had standing.  Opening Br. 49–50.  But the standing of at least one member is a *necessary requirement* for representational standing—not a *sufficient condition*. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

potentially viable claims, 477 U.S. at 284—not an organization like HOV lacking a single member with a viable claim.

### B.    HOV also lacks standing to sue on its own behalf.

The district court correctly held that HOV lacks standing to sue aside from its members' interests too: "HOV is an advocacy organization; and as such, it is not injured simply because Defendants action compelled the organization to do the very thing it was formed to do."  JA221.

An organization may establish standing by demonstrating that the defendants' actions "perceptibly impair" its ability "to carry out its mission" and "consequently drain [its] resources." *North Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (cleaned up). But this "standard is not met simply because an organization makes a unilateral and uncompelled choice to shift its resources … to address a government action." *Ibid.* (quotation marks omitted).  A "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (quotation marks omitted). Although a diversion of an organization's resources "reduc[es] the funds available for other

48

purposes," it "results not from any actions taken by the defendant, but rather from the organization's own budgetary choices." *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (quoting *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (cleaned up)). Indeed, holding that an organization suffers a cognizable injury when it voluntarily decides to spend money on advocacy and outreach efforts "would be to imply standing for organizations with merely 'abstract concerns with a subject that could be affected by an adjudication.'" *Id.*; *see also Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994).

HOV's theory of direct standing boils down to asserting that the government did something HOV it opposes, so now HOV feels compelled to reallocate resources to fix it. Opening Br. 53–55. That theory flies directly in the face of *Lane*'s admonition that the mere voluntary reallocation of resources does not confer Article III standing because, if it did, advocacy organizations would always enjoy standing to sue over anything they oppose, rendering Article III's injury-in-fact requirement illusory.

HOV's assertion that its reallocation of resources is involuntary is both implausible and hopelessly conclusory. Even if HOV is within its rights to prioritize investigations, Freedom of Information Act requests and media campaigns for IDEA issues in the Commonwealth, those are the sorts of pursuits HOV engages in anyway. *See* JA25; *see also Know Your IX v. DeVos*, No. RDB-20-01224, 2020 U.S. Dist. LEXIS 194288, at *19 (D. Md. Oct. 20, 2020) ("If this Court were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, *any* advocacy group could find standing . . . .") (emphasis in original). An organization's decision to prioritize an existing mission in response to a perceived need does not compromise that mission—and certainly not in a way that opens the door to federal court.

HOV does not allege that existing projects suffered because of an alleged reallocation of resources—it merely suggests there are other projects it would like to undertake. *See* JA26 (HOV had "*started to form a legislative drafting committee*"); JA26 ("HOV *had also initiated plans* to meet with key officials"); JA26 ("[a]nother core effort HOV *was beginning to explore* was expanding work with parents"); JA26 ("HOV's

50

efforts *also were to include seeking* commitments from law schools")
(emphases added). Claiming postponement of an inchoate wish list is not
a ticket to federal court. Holding otherwise would open the floodgates of
organizational standing.

*Lane* rejected precisely this theory. There, the organization
promoted "education, research, publishing and legal action" regarding
gun rights. 703 F.3d at 671. That organization claimed that Virginia
and federal laws "caused it to expend resources in response." *Ibid.* But
this Court held that "[t]o determine that an organization that decides to
spend its money on educating members, responding to member inquiries,
or undertaking litigation in response to legislation suffers a cognizable
injury would be to imply standing for organizations with merely 'abstract
concern[s] with a subject that could be affected by an adjudication.'" *Id.*
at 675 (alteration in original). Because HOV likewise decided to spend
its money consistent with its organizational purpose, the district court
correctly held it lacks standing. JA221.

## IV. This Court can affirm on the alternate ground that Plaintiffs' claims are meritless.

Although the district court did not need to reach the merits of
Plaintiffs' various claims against the VDOE Defendants, this Court can

affirm on that ground. *See, e.g.*, *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) ("We may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court.") (cleaned up); *see Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) (This Court is "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court.").

## A. Plaintiffs fail to state a due process claim.

### 1. Plaintiffs cannot assert an IDEA claim under the guise of due process.

First, Plaintiffs plead no due process violation against Superintendent Coons. Due process requires fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To allege a procedural due process claim, a plaintiff must show (1) that he had a property or liberty interest, (2) of which a state actor deprived him, (3) without due process of law. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009).

The FAC alleges none of those elements. Plaintiffs claim to have a constitutionally protected interest in the procedures and requirements of the IDEA. JA107. But the IDEA creates no fundamental right protected

by procedural due process. The Fourth Circuit has made clear that "[b]ecause [the] IDEA provides a comprehensive remedial scheme for violations of its own requirements . . . parties may not sue under section 1983 for an IDEA violation." *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998); *accord Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193–94 (3d Cir. 2009) (a school district's failure to fulfill its IDEA obligations to a specific student does not amount to a constitutional violation); *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013) (a Section 1983 claim does not lie when "entirely based on rights arguably conferred by the IDEA").

Yet this is exactly what Plaintiffs try to do here. The IDEA confers statutory rights, created with a comprehensive statutory scheme governing its enforcement. 141 F.3d at 527. Plaintiffs cannot evade those statutory provisions by bringing a claim under Section 1983 on the theory that a deprivation of IDEA rights violates the Constitution. *Id.* at 529. Because Plaintiffs' IDEA and Section 1983 claims are virtually the same, Plaintiffs cannot bring Section 1983 claims for alleged IDEA violations.

## 2. Plaintiffs received all process due.

Even if Plaintiffs had identified any cognizable property interest, there is no deprivation because D.C. and M.B. received all the process they were due. Plaintiffs' allegations show that they were afforded due process because: (1) D.C. and M.B. were issued IEPs (JA24, JA94); (2) D.C. and M.B., and their parents, participated in IEP team meetings when they had the opportunity to present evidence of D.C.'s and M.B.'s needs or requests for changes in the existing IEPs (JA51, JA91); (3) D.C. and M.B.'s parents agreed to IEPs (JA24, JA91, JA94); and (4) D.C., M.B, and their parents had an avenue to appeal any disagreement with D.C.'s and M.B.'s IEPs, both through the administrative due process hearing and through a lawsuit filed with the courts. (JA22, JA24).

Furthermore, at all relevant times, D.C. continued to receive a FAPE, specifically, educational instruction at Grafton. *See* JA50–51, JA94. D.C. claims, however, that when the Chaplicks sought to have FCPS pay for the residential program in addition to the day program in 2021, his assigned hearing officer was biased and refused to recuse herself. JA108–09. But asserting that his hearing officer was biased without any factual allegations to support such bias cannot state a claim

54

for lack of process because D.C. chose not to avail himself of the available procedural remedies and did not pursue the due process hearing. *See Kendall v. Balcerzak*, 650 F.3d 515, 528–30 (4th Cir. 2011) ("A procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (cleaned up); *see also Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002) (holding that petitioner was not deprived of procedural due process when there was no evidence that petitioner was denied the opportunity to participate in proceedings or otherwise denied notice and opportunity to be heard). Thus, D.C.'s allegations of a deprivation of a FAPE based on an inadequate IEP and a biased due process hearing without adequate due process of law rings hollow. JA107–08.

### B. Plaintiffs fail to state an equal protection claim.

Plaintiffs also fail to plead any equal protection violation. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must allege facts that plausibly suggest: (1) that he was treated

differently from others with whom he is similarly situated, and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff satisfies this showing, a court then proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *Ibid.*

### 1.    Plaintiffs allege no plausible better-treated comparator.

D.C. and M.B. do not allege that they were treated differently from other similarly situated persons. Two groups of persons are "similarly situated" only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation. *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996). A plaintiff must identify persons materially identical to him who have received different treatment. *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016).

The FAC fails to allege comparators sufficiently similar to D.C. and M.B. than whom they were treated differently. Plaintiffs allege that they

were treated differently than other children without disabilities, as those students were given a "free public education required by the Constitution of Virginia." JA110. But neither group is similarly situated. *See, e.g.*, *Camac v. Long Beach City Sch. Dist.*, No. 2:09-CV-5309, 2011 U.S. Dist. LEXIS 79997, at *47–48 (E.D.N.Y. July 22, 2011) (dismissing equal protection claims because plaintiff could not show that the circumstances of "'similarly situated' non-disabled students" are "'prima facie identical' to [plaintiff]'s"). More important, Plaintiffs ignore that other children with disabilities may not be similarly situated to each other, given the diversity of disabilities from which children may suffer, and the different ways in which the same diagnosed disability may affect the lives and educational disposition of different children. *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 400 (2017); *Killoran v. Westhampton Beach Sch. Dist.*, No. 2:20-CV-4121, 2022 U.S. Dist. LEXIS 52169, at *25–27 (E.D.N.Y. Mar. 22, 2022) (dismissing plaintiff's equal protection claims because plaintiff failed to plead "any factual allegations demonstrating how these 'alternately assessed special education students" circumstances are '*prima facie* identical' to [plaintiff]'s.") (citations omitted) (emphasis in original). Here, D.C. and

M.B. do not suffer from the same alleged disabilities nor need the same types of accommodations.

### 2. Plaintiffs allege no intentional or purposeful discrimination.

D.C. and M.B. also fail the second prong of the analysis because the FAC does not plead sufficient facts to show that the allegedly unequal treatment "was the result of *intentional or purposeful discrimination.*" *Equity in Ath., Inc. v. Dep't of Educ.*, 675 F. Supp. 2d 660, 679–80 (W.D. Va. 2009) (emphasis in original) (quoting *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003)).

Plaintiffs' flawed statistics do not support their assertion that VDOE Defendants acted with the required "discriminatory intent." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 883 (4th Cir. 2023) (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Plaintiffs do not allege any evidence of discriminatory intent. Plaintiffs provide no specific allegations of how the hearing officers acted in a biased manner. Instead, Plaintiffs support their claims with a flawed statistical analysis of VDOE hearing decisions which they assert demonstrates a history of bias. But statistics alone cannot demonstrate bias because there is no disparate impact claim under the IDEA. *See* JA226; *Matter of Beverly Hills*

*Bancorp*, 752 F.2d 1334, 1341 (9th Cir. 1984) ("Unfavorable rulings alone are legally insufficient to require recusal, even when the number of such unfavorable rulings is extraordinarily high on a statistical basis." (citing *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 930 (2d Cir. 1980)); *cf. Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370, at *4 (4th Cir. June 12, 2023) ("general statistics alone do not indicate discrimination or bias ... as other reasons unrelated to bias may explain the disparity"). Plaintiffs' speculation and unsupported conclusions about why such outcomes occurred cannot establish animus.

> ### 3. Plaintiffs' claims are subject to easily satisfied rational-basis review.

Nor is there any basis for applying strict scrutiny, leaving only rational-basis review that is undisputedly satisfied here. First, Plaintiffs have no fundamental right to an education under the U.S. Constitution, nor do they assert any basis for a federal fundamental right to education. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999). Second, even if there were a fundamental right to education,

Plaintiffs do not assert that they have been denied that right. The FAC shows that free access to public education was offered to Plaintiffs. Because there is no fundamental right to the specific form of education that a particular family would prefer, rational basis review applies. And Plaintiffs do not even contend that they can prevail under that standard.

### C.    Plaintiffs fail to state an IDEA claim.

Last, Plaintiffs do not plead any plausible IDEA claim. They allege two supposed IDEA violations: that (i) VDOE failed to provide adequate IEPs and that (ii) VDOE did not offer proper procedural safeguards due to biased, unqualified hearing officers. But Plaintiffs fail to state a claim against VDOE because Plaintiffs allege only procedural, not substantive, violations of the IDEA, and Plaintiffs have pled no IDEA violations for which VDOE is responsible.

### 1.    Plaintiffs solely allege procedural violations of the IDEA.

First, Plaintiffs cannot establish a claim under the IDEA because procedural violations alone are insufficient to establish an IDEA claim unless they "result[] in the loss of an educational opportunity for the disabled child." *T.B. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 573 (4th Cir. 2018) (citation and internal quotation marks omitted).

"[P]rocedural violations committed by [a LEA], including its failure to offer a *specific* placement[, are] not actionable [if] they did not result in a loss of an educational opportunity to [the child] or infringe on the parents' right to participate in the IEP process." *K.J. ex rel. B.J. v. Fairfax Cnty. Sch. Bd.*, 361 F. App'x 435, 438 (4th Cir. 2010) (emphasis in original).

Here, FCPS provided both M.B. and D.C. with a FAPE because both were issued IEPs that addressed their identified needs, and FCPS provided their parents with an opportunity to participate in the formulation of those IEPs. JA18–20. The Plaintiffs admit that they were never prevented from participating in the IEP formulation process and that the Chaplicks and the Binghams participated in the IEP team's formulation of M.B.'s and D.C.'s IEPs. JA51–52, JA54. While the Chaplicks and Binghams request that M.B. and D.C. be placed in their school-of-preference, the issue under the IDEA is not whether either of the schools identified by the Chaplicks or Binghams "is better, or even appropriate, but whether [FCPS] has offered . . . an appropriate program for [M.B. and D.C.] at [the FCPS schools identified in their IEPs]." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 324 (4th Cir. 2004) (second

alteration in original).  The individual Plaintiffs received a FAPE and were not prevented from participating in the IEP process.

Plaintiffs' argument about the bias of hearing officers is a red herring.  VDOE's due process hearing system mirrors the systems of many of Virginia's administrative agencies—and the Supreme Court of Virginia provides a roster of vetted hearing officers.  8 Va. Admin. Code § 20-81-210(C).[10]  The Plaintiffs base their claim of bias on the fact that VDOE compensates due process hearing officers.  But many government officers with adjudicative responsibilities are paid by the agencies they serve, such as hearing officers for the worker's compensation system.

At best, Plaintiffs assert a disparate impact claim by alleging bias based on a neutral policy supporting "an impartial hearing officer system that is administered by the Supreme Court of Virginia."  8 Va. Admin. Code § 20-81-210(B).  Yet this claim must fail because the IDEA does not provide a cause of action for disparate impact.  *See Washington*, 426 U.S.

---

[10] Other States maintain similar rosters of hearing officers for use in special education due process hearings. *See, e.g.*, N.H. Code Admin. R. Ed 1123.24(a) (requiring that the State's "office of legislation and hearings…keep a list of persons who serve as hearing officers"); Kan. Admin. Regs. § 91-40-29(b)(2) (requiring the state board of education to maintain a list of qualified due process hearing officers).

at 248 (holding that a disparate impact claim can be raised only if a statute expressly provides for its application, as in Title VII or statutes concerning public employment).

### 2. Plaintiffs assert no violations of VDOE's IDEA duties.

Even taking Plaintiffs' allegations as true, Plaintiffs' arguments are inapposite because any purported IDEA violations asserted are outside the scope of VDOE's duties. Plaintiffs list several alleged procedural shortcomings by VDOE affecting the day-to-day offering of a FAPE. Opening Br. 8–10. But nowhere do Plaintiffs claim that the alleged failures were responsibilities belonging to VDOE. Indeed, the LEA like FCPS has the statutory duty to "direct[ly] provi[de] services under IDEA, including the development of an [IEP] . . . , the expenditure of IDEA funds . . . , and the maintenance of records and the supply of information to [VDOE] as needed to enable [VDOE] to function effectively in its supervisory role." *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997); 34 C.F.R. § 300.28 (providing that the LEA is the "authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, [schools or districts]").

63

Simply, Plaintiffs seek to require VDOE, the state education agency, to supplant an LEA's role by second-guessing the FAPE that the LEA offers. Plaintiffs' main complaint is that the FAPE provided by FCPS was not the FAPE they preferred. But FCPS, not VDOE, forms and implements the IEP, and the parents of the child had a chance to participate in the formulation of an IEP. 8 Va. Admin. Code § 20-81-110(A), (E).

## CONCLUSION

For these reasons, this Court should affirm the dismissal.

Respectfully submitted,

VIRGINIA DEPARTMENT OF
EDUCATION and LISA COONS

By:  _/s/ Brian D. Schmalzbach_
      Brian D. Schmalzbach
      MᴄGᴜɪʀᴇWᴏᴏᴅs LLP

JASON S. MIYARES           ANDREW N. FERGUSON
  *Attorney General*          *Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

Jackie Lynn White, II        Brian D. Schmalzbach
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP       MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
1750 Tysons Boulevard     Gateway Plaza
Suite 1800             800 East Canal Street
Tysons, VA 22102        Richmond, VA 23219
(703) 712-5474           (804) 775-4746
                   bschmalzbach@mcguirewoods.com

Farnaz Farkish Thompson
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
888 16th Street, NW
Washington, DC 20006
(202) 857-2488

*Counsel for Defendants-Appellees Virginia Department of Education
and Lisa Coons*

December 11, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,549 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach